[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-5131
_____

D. C. Docket Nos. 93-2247-CIV-MOORE
                  94-0734-CIV-MOORE

EDWARD GITLITZ,

                                        Plaintiff-Appellant,

                    versus

COMPAGNIE NATIONALE AIR FRANCE,

                                        Defendant-Appellee.

----------------------------------------------

JOE F. COLLINS,

                                        Plaintiff-Appellant,

                    versus

COMPAGNIE NATIONALE AIR FRANCE,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(November 19, 1997)**

Before ANDERSON, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Edward Gitlitz and Joe F. Collins brought suit against their former employer, Compangie Nationale Air France, alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA) and the Age Discrimination in Employment Act of 1967 (ADEA). The district court dismissed Collins's ADEA claims and granted summary judgment for the defendant with respect to the ERISA claims of both plaintiffs.[1]

## I. Facts and Procedural History

Edward Gitlitz and Joe F. Collins were employed as outside sales representatives for Air France for 35 and 22 years, respectively. In 1993, Air France implemented a new personnel structure which eliminated their positions as salaried outside sales representatives, but offered them the opportunity to continue doing essentially the same jobs as independent contractors, known as Business Development Attaches ("BDA's"). Some representatives, such as the plaintiffs, also satisfied the age and service requirements to qualify for early retirement and receive pension benefits.[2] However, under the new structure, they were not

---

[1] The district court denied the defendant's motion for summary judgment on Gitlitz's ADEA and Florida Civil Rights Act claims. These matters are not before us on appeal. The other issues are properly before us pursuant to an order of partial final judgment by the district court. Fed.R.Civ.P. 54(b).

[2] Plaintiff Gitlitz was 59 years old and Plaintiff Collins was 56 years old when the positions were eliminated.

2

permitted to take early retirement and begin receiving pension benefits and also become independent contractors/BDAs; they were forced to choose one or the other.[3]

Plaintiffs filed their respective complaints in 1994, alleging that Air France's elimination of their sales representative positions and the manner in which it was done constituted discrimination in violation of the ADEA and ERISA.

Gitlitz filed timely ADEA administrative charges with the EEOC and filed suit in district court within 90 days of receiving a right-to-sue letter from the EEOC. Collins also filed ADEA administrative charges with the EEOC. The EEOC issued a no-cause determination and right-to-sue letter which Collins received on November 15, 1993. The letter stated that Collins had 90 days within which to file suit. After contacting his congressman, Collins received a second right-to-sue letter on January 28, 1994,[4] which rescinded the first letter and stated that Collins had another 90 days within which to file suit. On April 15, 1994, Collins filed his complaint in district court. Concluding that

---

[3] The defendant claims that the plaintiffs "opted voluntarily to participate in an enhanced early retirement plan." The plaintiffs characterize the situation as forced retirement or forfeiture of their ERISA benefits. Both sides agree that the sales representatives could not exercise both options.

[4] Upon receipt of this second letter, Collins had approximately 16 or 17 days left of the 90 day statutory period triggered by the first letter.

3

Collins's second EEOC letter was ineffective, the district court dismissed Collins's ADEA claim as untimely.

The district court denied Air France's motion for summary judgment on the ADEA claim of Gitlitz, holding that he had raised a triable question of fact on the issue of pretext in Air France's employment decision.

The district court granted summary judgment on the ERISA claims as to both plaintiffs.[5]

## II.  Summary Judgment Standard

This Court applies a <u>de novo</u> standard of review to a district court's grant of summary judgment.  <u>See, e.g.</u>, <u>Scala v. City of Winter Park</u>, 116 F.3d 1396, 1398 (11th Cir. 1997).  Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  <u>Id.</u>  "All evidence and reasonable factual inferences drawn therefrom are reviewed in the light most favorable to the party opposing the motion."  <u>Warren v. Crawford</u>, 927 F.2d 559, 561-62 (11th Cir. 1991) (citations omitted).

## III.  Discussion

A.  Collins's ADEA Claim

Collins appeals the district court's dismissal of his ADEA claim as untimely.  He argues that even if his claim was not timely filed, he should be entitled to equitable tolling based on his

---

[5]  The district court adopted in part and amended in part the Report and Recommendation of United States Magistrate Judge Ted E. Bandstra dated June 1, 1995.

4

reliance on the second letter he received from the EEOC. However, because plaintiff did not fairly present this equitable tolling argument to the district court, we decline to entertain the argument for the first time on appeal.

With regard to his other arguments, we must first determine whether Collins's second letter, received on January 28, 1994, was effective. The parties agree that under the applicable law the second EEOC letter was effective if issued pursuant to an EEOC reconsideration of the merits, but was not effective if there was no reconsideration. Gonzales v. Firestone Tire and Rubber, 610 F.2d 241, 246 (5th Cir. 1980) ("The EEOC may issue a second ninety-day right-to-sue notice upon completion of a discretionary reconsideration of a prior determination.").[6] See also Lute v. Singer Co., 678 F.2d 844, 846 (9th Cir. 1982); Trujillo v. GE Co., 621 F.2d 1084, 1087 (10th Cir. 1980).

Our review of the summary judgment record persuades us that there is no genuine issue of fact with regard to this issue: there was no reconsideration by the EEOC. There is no indication that additional evidence was before the EEOC. There was no request that the EEOC reconsider on the merits. The only evidence of any communication between the parties and the EEOC is an inference that Collins's congressman may have called the EEOC in response to

---

[6] This Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

5

Collins's request that he assist in obtaining an extension of time. Neither the second EEOC letter nor the cover letter accompanying it indicates that it was the culmination of a reconsideration. To the contrary, the cover letter said that "[t]he Determination is *re-issued* as of this date" (emphasis added). The term "re-issue" suggests that the original determination was merely issued again with a new date. Moreover, the second EEOC letter is a verbatim copy of the first letter except for a single difference -- i.e., the date. The relevant regulations, 29 C.F.R. 1601.21(b) and (d), contemplate that "[i]n cases where the Commission decides to reconsider a dismissal or a determination finding reasonable cause to believe a charge is true, a notice of intent to reconsider will promptly issue." Neither party in this case received a notice of intent to reconsider; rather they received only a verbatim copy of the initial letter with a new date. Under all of these circumstances, we do not believe a factfinder could conclude that the EEOC reconsidered this case on the merits.

Collins argues that even if the second EEOC letter is ineffective, he should nevertheless be permitted to attach his claim to Gitlitz's under the single-filing rule. It is clear that a plaintiff who has *not* filed an EEOC charge may "piggyback" on the timely filing of an EEOC charge by another plaintiff who faced similar discriminatory treatment in the same time frame. Calloway v. Partners National Health Plans, 986 F.2d 446, 449 (11th Cir. 1993); Grayson v. Kmart Corp., 79 F.3d 1086, 1101 (11th Cir. 1996)

6

(finding that the single-filing rule applies to ADEA claims), <u>cert. denied</u>, __ U.S. __, 117 S. Ct. 447 (1996).

Collins argues that it would be ironic to find that the case law permits a plaintiff who has *not* filed an EEOC charge to "piggyback" his claim, but then to deny the "piggyback" option to a plaintiff who has exercised somewhat more diligence by filing an EEOC charge although failing to follow through with a timely suit. The Eighth Circuit addressed and rejected just such an argument:

> It is somewhat ironic, however, that [a person], who did not even file an administrative charge, is permitted to continue in this action while the others have been dismissed, and we believe that result requires a brief explanation. . . . Our decision . . . permitted plaintiffs who had not filed administrative charges to "piggyback" on the timely filing of an administrative charge filed by another claimant who purported to represent the interests of a class of similarly situated employees. . . . For those plaintiffs who have never filed an administrative charge and who are allowed to piggyback on the filed claim of another, we deem it reasonable to permit them to join suit as long as the claimant on whose administrative filing they have relied timely files suit . . . .
>
> Those plaintiffs who do file administrative charges, however, should be bound by the statute of limitations, which is normally stated in the right-to-sue letter. . . . [O]nce they file separate administrative charges, they cannot rely any further on the other claimant's actions and must timely file suit after receiving their right-to-sue letters. Thus, any claimant who files an administrative charge and receives a right-to-sue letter from the EEOC must file suit within ninety days after receiving that letter to preserve the cause of action.

<u>Anderson v. Unisys Corp.</u>, 47 F.3d 302, 308-09 (8th Cir.), <u>cert. denied</u>, __ U.S. __, 116 S.Ct. 299 (1995). Similarly, the Fifth Circuit concluded that "where the party wishing to piggyback has filed his own EEOC charge," he is "bound by the parameters of his

7

own EEOC charge, and cannot subsequently utilize the single filing rule to avoid the statute of limitations." Mooney v. Aramco Services Co., 54 F.3d 1207, 1223-24 (5th Cir. 1995).

We agree with the reasoning of the Eighth Circuit and the Fifth Circuit. In fashioning the ADEA statute of limitations, Congress carefully balanced the interests of plaintiffs and the interests of employers. A plaintiff who has *not* filed an individual EEOC charge may invoke the single-filing rule where such plaintiff is similarly situated to the person who actually filed an EEOC charge, and where the EEOC charge actually filed gave the employer notice of the collective or class-wide nature of the charge. In such circumstances, it is reasonable from the perspective of the employer's interests and the interests of economy of administration within the agency to permit such a plaintiff to rely upon the other claimant's EEOC charge. However, where a plaintiff has filed an individual EEOC charge, such a plaintiff should be required to rely upon his or her own EEOC charge, and cannot reasonably rely upon the other claimant's charge. Thus, we conclude that Collins may not "piggyback" onto Gitlitz's ADEA claim.

For the foregoing reasons, we affirm the district court's dismissal of Collins's ADEA claim.

B. ERISA Claims

Both Collins and Gitlitz claim that their termination was a violation of ERISA § 510 which makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a

8

participant or beneficiary [of an employee benefit plan] . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . ." 29 U.S.C. § 1140. This section prohibits interference with present pension benefits and also protects against interference with future entitlement to receive the same. See Inter-Modal Rail Employees Assoc. v. Atchison, Topeka and Santa Fe R.R. Co., __ U.S. __, 117 S. Ct. 1513, 1515 (1997); Clark v. Coats & Clark, 990 F.2d 1217. 1222 (11th Cir. 1993) ("Section 510 . . . protects the right . . . to accrue additional vested benefits.")

Clark v. Coats & Clark articulated the Eleventh Circuit test for demonstrating a violation of § 510:

> The ultimate inquiry in a § 510 case is whether the employer had the specific intent to interfere with the employee's ERISA rights. . . . A plaintiff is not required to prove that interference with ERISA rights was the sole reason for the discharge but must show more than the incidental loss of benefits as a result of a discharge. . . . This burden can be met either by showing direct proof of discrimination or by satisfying the scheme for circumstantial evidence established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), and restated in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981).

990 F.2d at 1222-23. Under the McDonnell Douglas scheme, the plaintiff must demonstrate a prima facie case of discrimination, which creates a presumption of discrimination. The defendant then must articulate a legitimate nondiscriminatory reason for his conduct. If the defendant does so, the presumption of discrimination disappears, and in order to prevail the plaintiff

9

must demonstrate that the reason given was a mere pretext for discrimination.  Id. at 1223.

Clark v. Coats & Clark also articulated the test for a prima facie case:

> In the context of a §510 claim alleging unlawful discharge, a plaintiff may establish a prima facie case of discrimination by showing (1) that he is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination. . . . To satisfy the last element the plaintiff does not have to prove discriminatory intent but must introduce evidence that suggests interference with ERISA rights was a motivating factor. . . . The plaintiff, however, cannot establish a prima facie case merely by showing that, as a result of the termination, he was deprived of the opportunity to accrue more benefits. . . . Moreover, measures designed to reduce costs in general that also result in an incidental reduction in benefit expenses do not suggest discriminatory intent. . . . Instead the employee must introduce evidence suggesting that the employer's decision was directed at ERISA rights in particular.

Id. at 1223-24.

In Seaman v. Arvida Realty Sales, 985 F.2d 543 (11th Cir. 1993), we held that a company's reclassification of employees as independent contractors could, if done with specific intent to interfere with the employees' future ERISA benefits, give rise to a violation of § 510.

In this case the district court held that the plaintiffs failed to demonstrate a violation of § 510.  After a careful review of this summary judgment record, we disagree.  We readily conclude that plaintiffs have created genuine issues of fact with respect to the prima facie case.  Plaintiffs are clearly entitled to ERISA's protection and qualified for the job, thus satisfying the first two

prongs.  For the reasons discussed below, we also conclude that plaintiffs have satisfied the third prong by adducing sufficient evidence to create a genuine issue of fact on the issue of whether Air France reclassified them from employees to independent contractors with specific intent to interfere with their ERISA benefits.  Air France has articulated what it asserts to be a legitimate business reason for its actions -- i.e., that it reclassified plaintiffs and the other outside sales representatives in order to motivate the sales force.  Thus, the issue before us is whether plaintiffs have adduced sufficient evidence to create a genuine issue of fact as to whether Air France's purported reason was a pretext for discrimination, or, in other words, whether Air France had a specific intent to interfere with employees' ERISA rights.

After a careful review of this summary judgment record, we conclude that plaintiffs have adduced evidence from which a factfinder could reasonably find that Air France conceived and implemented the BDA structure for the specific purpose of interfering with the ERISA rights of plaintiffs and others similarly situated.  It is clear that plaintiffs were entitled to continue accruing ERISA benefits in their previous status as employees, but were excluded from all ERISA plans in the independent contractor status of BDA.  Plaintiffs have adduced evidence from which a factfinder could find that the change of status was accompanied by no substantial change in the job function, in the manner the job was expected to be performed, in

11

the supervisors, or in the control exercised by the supervisors. There is also a genuine issue of fact as to whether the BDA program would save future ERISA costs for Air France, and the extent of any such savings. The only business reason for the change which has been asserted by Air France is that its purpose was to motivate the sales force. However, counsel for plaintiffs, in deposing the two Air France managers who apparently were involved in the decision, pressed each for an explanation of how the BDA structure operated to enhance such motivation in a manner not also equally feasible in an employee status. Neither provided an intelligible answer. Similarly, at oral argument in this Court counsel for Air France was unable to provide an intelligible answer to that question. Our careful review of this summary judgment record reveals no apparent way in which the independent contractor status, as implemented in this case, served to enhance motivation in a manner not equally feasible in an employee context.[7] The only feature of the new BDA structure which apparently would serve to increase motivation was an increased reliance on a bonus method of compensation, a method which is as readily adapted to employee status as to independent contractor status.

---

[7] We expressly leave open the possibility that some other formulation of job functions and responsibilities in an independent contractor context might constitute a legitimate business reason and rebut any inference of specific intent to interfere with ERISA rights. We hold only that the BDA program as implemented in this record and in conjunction with the other evidence in this record leaves a genuine issue of fact as to such specific intent.

Under all the circumstances revealed by the instant record, we conclude that a factfinder could find that Air France's asserted business reason is a pretext, and that Air France did have a specific intent to deprive plaintiffs, and others similarly situated, of their right to accrue future ERISA benefits. This would violate § 510. <u>Clark v. Coats & Clark</u>, <u>supra</u>, 990 F.2d at 1222; <u>Seaman v. Arvida</u>, <u>supra</u>, 985 F.2d at 545-47.

Accordingly, with respect to plaintiffs' ERISA claims, we reverse the grant of summary judgment and remand the case to the district court for further proceedings.

## IV. Conclusion

We affirm the district court's dismissal of Collins's ADEA claim. We reverse the district court's grant of summary judgment on the ERISA claims of both plaintiffs, and remand these claims. AFFIRMED IN PART, REVERSED AND REMANDED IN PART.