PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 98-8623

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/26/99
THOMAS K. KAHN
CLERK

D. C. Docket No. 5:97-cv-622-3(HL)

MICHAEL CLARK, JOHN HARPER, et al.,

Plaintiffs-Appellees,

versus

PUTNAM COUNTY, BILL MOORE, In his official
capacity as Chairman of the Putnam County Board
of Commissioners, et al.,

Defendants-Appellees,

GEORGE W. THOMPKINS,
ULYSSES RICE et al.,

Movants-Appellants.

Appeal from the United States District Court
for the Middle District of Georgia

**(February 26, 1999)**

Before COX and BIRCH, Circuit Judges, and THRASH[*], District Judge.

COX, Circuit Judge:

---

[*] Honorable Thomas W. Thrash, U. S. District Judge for the Northern District of Georgia, sitting by designation.

Six black voters and the Georgia State Conference of NAACP Branches appeal the district court's denial of their motion to intervene as defendants in this suit challenging the constitutionality of Putnam County, Georgia's commission districts.  We affirm in part and reverse in part.

## 1.  Background

Historically, Putnam County elected its county commissioners at large.  In the late 1970s, a class consisting of the County's black citizens (roughly 49% of the County's population in 1970) challenged this election practice as vote dilution in violation of their constitutional rights.  *See Bailey v. Vining*, 514 F. Supp. 452, 453 (M.D. Ga. 1981).  The district court found that the County had a history of racial segregation and that "blacks have not shared equally in the political process in Putnam County." *Id.* at 454.  Among the services affected by this history of discrimination were road paving, parks and recreation, public employment, and education. *See id.* at 454-57.  These facts supported an inference of racial discrimination, according to the court, and it concluded that the at-large electoral system was "maintained for the specific purpose of limiting the county's . . . black residents' ability to meaningfully participate" in county elections. *Id.* at 463.

Based on these conclusions, the *Bailey* court imposed on the County a single-member district system for electing the county commission.  Under the court-imposed system, four members of the five-member county commission are elected from single-member districts, while the fifth is elected at large.  Two of the districts include a black majority.  In 1992, the court amended its decree to reflect 1990 census data, but it retained two majority-black districts.  The two majority-black districts are currently represented by black commissioners.

In 1997, four white Putnam County voters brought the present case against Putnam County and its commissioners to challenge the constitutionality of the 1992 court-ordered voting plan under

2

*Shaw v. Reno*, 509 U.S. 630, 113 S. Ct. 2816 (1993).[1] Six black Putnam County voters (two of whom were named plaintiffs in the *Bailey* action) and an association of Georgia NAACP branches moved to intervene to defend the court-ordered single-member districts. The district court denied the motion on the ground that the black voters' interests were adequately represented by the county commissioners.

The proposed interveners appeal. Because the proposed interveners sought to intervene by right, our review of the district court's order is de novo as to matters of law, althoughh we review subsidiary fact-findings only for clear error. *See Meek v. Metropolitan Dade County, Fla.*, 985 F.2d 1471, 1477 (11th Cir. 1993).

## 2. Discussion

*a. The six black voters.* Litigants are entitled to intervene in an action when they timely "claim[] an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). The timeliness of the motion, the proposed interveners' interest, and the risk of that interest's impairment are not disputed here. Hence, the only question is whether existing parties — the county commissioners — adequately represent the proposed interveners' interests.

---

[1] *Shaw* announced that "a plaintiff may state a claim for relief under the Equal Protection Clause of the Fourteenth Amendment by alleging that a State 'adopted a reapportionment scheme so irrational on its face that it can be understood only as an effort to segregate voters into separate voting districts because of their race, and that the separation lacks sufficient justification.'" *United States v. Hays*, 515 U.S. 737, 738-39, 115 S. Ct. 2431, 2433 (1995) (quoting *Shaw*, 509 U.S. at 658, 113 S. Ct. at 2832).

We presume adequate representation when an existing party seeks the same objectives as the would-be interveners. *See Meek*, 985 F.2d at 1477; *FSLIC v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993). But the presumption is weak; in effect, it merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary. *See Meek*, 985 F.2d at 1477 ("[The presumption] merely requires the presumed result *unless* some evidence is placed before the court tending to rebut it.") (emphasis in original). Once the would-be interveners have carried their burden, the court returns to the general rule that adequate representation exists "if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed interven[e]r, and if the representative does not fail in fulfillment of his duty." *Falls Chase*, 983 F.2d at 215 (quoting *United States v. United States Steel Corp.*, 548 F.2d 1232, 1236 (5th Cir. 1977)). Showing any of these factors is not difficult. The "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 636 n.10 (1972).

The facts here show a sufficient divergence of interest between the six black voters and the county commissioners to rebut the presumption and entitle the six black voters to intervene. First, the county commissioners have asserted to both the district court and the court of appeals[2] that they represent the interests of all Putnam County citizens. (The commissioners take no position on the

---

2        Our "facts," like the district court's, are drawn from the history of this litigation and undisputed assertions of counsel. This lack of evidence, strictly defined, did not trouble the district court and does not worry the parties; so we follow their lead without deciding whether this is proper "evidence."

4

merits of the intervention motion, however.) This intent to represent everyone in itself indicates that the commissioners represent interests adverse to the proposed interveners; after all, both the plaintiffs and the proposed defendant-interveners are Putnam County citizens. The commissioners cannot adequately represent the proposed defendants while simultaneously representing the plaintiffs' interests.[3] The commissioners' pledge to represent all citizens has another component, as well, that reflects an interest distinct from the proposed interveners': the commissioners have a duty to consider the expense of defending the current plan out of county coffers. *Cf. Meek*, 985 F.2d at 1478.

Second, the commissioners are undisputedly elected officials, and like all elected officials they have an interest in "remain[ing] politically popular and effective leaders." *Meeks*, 985 F.2d at 1478. While they may now assert that they will defend the current voting plan, the discussion of settlement that was mentioned on the record at the hearing suggests that an altered plan is a possible outcome of this lawsuit. The court cannot assume that in negotiating a new plan the commissioners will represent the interest of the black interveners to have an opportunity to elect the commissioner of their choice. It would be in the commissioners' interest, for example, to agree on a plan that would preserve their seats, while compromising the proposed interveners' voting power.

---

[3] For this reason we also can take as rebutted another presumption the plaintiffs rely upon: that elected officials will represent their constituents' interests. *See, e.g., McLean v. Arkansas*, 663 F.2d 47, 48 (8th Cir. 1981). Because elected officials in a majority-rule democracy may represent only part of the electorate (for instance, members of their party), "it is normal practice in reapportionment controversies to allow intervention of voters . . . supporting a position that could theoretically be adequately represented by public officials." *Nash v. Blunt*, 140 F.R.D. 400, 402 (W.D. Mo. 1992), *summarily aff'd sub nom. African Am. Voting Rights Legal Defense Fund, Inc. v. Blunt*, 507 U.S. 1015, 113 S. Ct. 1809 (1993).

Finally, the suggestion of settlement at the hearing shows yet another divergence of interests. The plaintiffs have asserted, and the proposed interveners have not denied, that the proposed interveners are adverse to settlement. That being the case, the proposed interveners intend to pursue their favored result with greater zeal than the county commissioners. A greater willingness to compromise can impede a party from adequately representing the interests of a nonparty. *See Meek*, 985 F.2d at 1478 (county commissioners' failure to appeal adverse ruling entitled proposed interveners to intervene to pursue the appeal). These facts together show that the county commissioners' representation of the proposed interveners "may be" inadequate; that is enough to entitle the six black voters to intervene. *Trbovich*, 404 U.S. at 538 n.10, 92 S. Ct. at 636 n.10.

The primary counterarguments of the plaintiffs are first, that the proposed interveners wish to vindicate illegitimate interests and second, that their participation would complicate and protract the litigation. We reject both points as irrelevant. The first argument boils down to an assertion that the proposed interveners seek to assert an interest in proportional representation that is unconstitutional under *Shaw v. Reno* and its progeny. It may well be that the proposed interveners' asserted *interest* is not a *right*. But that is a question of the merits of their defense, and whether an applicant for intervention will prevail in a suit is not an element of intervention by right. The second argument is likewise irrelevant. Rule 24(a)(2) does not take into account the convenience of the existing parties. *Cf. McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970) ("[M]ere inconvenience is not in itself a sufficient reason to reject as untimely a motion to intervene as of right."). We conclude that the six black voters had a right to intervene in this action.

We point out that we are not alone in this conclusion. As the proposed interveners observe, voters have been permitted to intervene in a large number — if not all — of the actions involving

a *Shaw v. Reno* claim. *See, e.g.*, *Cannon v. Durham County Bd. of Elections*, 959 F. Supp. 289 (E.D.N.C.), *aff'd on other grounds*, 129 F.3d 116 (4th Cir. 1997); *Scott v. United States Dep't of Justice*, 920 F. Supp. 1248, 1250 (M.D. Fla. 1996), *aff'd on other grounds sub nom. Lawyer v. Department of Justice*, 117 S. Ct. 2186 (1997); *Vera v. Richards*, 861 F. Supp. 1304, 1310 (S. D. Tex. 1994), *aff'd on other grounds sub nom. Bush v. Vera*, 517 U.S. 952, 116 S. Ct. 1941 (1996); *Shaw v. Hunt*, 861 F. Supp. 408, 420 (E.D.N.C. 1994), *rev'd on other grounds*, 517 U.S. 899, 116 S. Ct. 1894 (1996).

b. *The NAACP*. The intervention of the NAACP is complicated by an issue of its particularized interest in the litigation. Were the NAACP seeking to intervene as a plaintiff to create single-member districts, it would probably lack Article III standing unless it has members who are Putnam County voters. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342, 97 S. Ct. 2434, 2441 (1977) (association may represent members' interests); *cf. United States v. Hays*, 515 U.S. 737, 745, 115 S. Ct. 2431, 2436 (1995) (only voters in congressional district have standing to challenge it on equal-protection grounds). A lack of Article III standing (assuming the NAACP needs standing to intervene as a defendant) does not automatically disentitle the NAACP to intervene. *See Ruiz v. Estelle*, 161 F.3d 814, 831 (5th Cir. 1998); *Chiles v. Thornburgh*, 865 F.2d 1197, 1212-13 (11th Cir. 1989). But a lack of Article III standing could suggest that the NAACP also lacks the particularized interest that an intervener must have in the litigation. *See id.*; *see also United States v. South Fla. Water Management Dist.*, 922 F.2d 704, 707 (11th Cir. 1991).

Although the plaintiffs raised this issue, the district court did not reach it, and made no findings of fact, because the court concluded that the county commissioners adequately represented the NAACP. For the reasons explained above, we conclude to the contrary on the adequate

representation issue. Rather than address the particularized-interest issue here for the first time, however, we vacate the part of the district court's order denying the NAACP's motion to intervene and remand for the district court to consider the particularized-interest issue in the first instance.

*3. Conclusion*

For the foregoing reasons, we reverse that part of the district court's order that denies intervention to the six black Putnam County voters. We merely vacate, however, the part of the order that denies intervention to the NAACP and remand for the district court to consider in the first instance whether the NAACP has a sufficiently particularized interest to intervene.

REVERSED IN PART; VACATED AND REMANDED IN PART.