[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 3,, 2004
THOMAS K. KAHN
CLERK

————————————————

No. 03-13128

————————————————

D.C. Docket No. 94-06932-CV-ASG

ARLENE M. STONE,
et al.,

Plaintiffs-Appellants,

versus

FIRST UNION CORPORATION, Charlotte, N.C.,
FIRST UNION CORPORATION OF FLORIDA,
FIRST UNION NATIONAL BANK OF FLORIDA,
WACHOVIA CORPORATION,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(JUNE 3, 2004)

Before BIRCH, KRAVITCH and OAKES[*], Circuit Judges.

KRAVITCH, Circuit Judge:

———————————

[*] Honorable James L. Oakes, United States Circuit Judge for the Second Circuit, sitting
by designation.

Former bank employees attempted to bring a class action against First Union National Bank of Florida ("First Union") for age discrimination.[1] The district court initially certified the plaintiffs as an opt-in class, but later decertified the class. The plaintiffs then sought to intervene in the named plaintiff's individual suit against First Union. The district court denied the motion to intervene and the plaintiffs now appeal. We reverse.

I.  Facts and Procedural History

Between 1991 and 1994, First Union acquired several banks, including Southwest Bank of Florida, the bank that employed Arlene Stone as a branch manager. After the acquisition in the fall of 1991, Stone was demoted to assistant manager at another branch and informed that her position would be eliminated. She applied for other positions with First Union but was not hired. Her employment was terminated in October 1992. Stone sued First Union for age discrimination, alleging that First Union instituted a plan whereby older employees were demoted or subject

---

[1] First Union National Bank of Florida is wholly owned by First Union Corporation through its subsidiary, First Union Corporation of Florida. The plaintiffs amended their complaint to add Wachovia Corporation as a defendant after it merged with First Union Corporation in September 2001.

to other adverse employment actions.[2]  Stone sought class action status for other First Union employees, and the district court granted a preliminary and conditional class certification, which allowed other employees allegedly injured by First Union's acquisitions to "opt-in" to Stone's suit.[3]  One hundred and sixty employees subsequently joined the suit.  The district court, however, later decertified the class because class members had different jobs within the bank and had a variety of claims against First Union.  This court denied the plaintiffs' petition for permission to appeal the decertification order.

After the class was decertified, the opt-in class members motioned to intervene in Stone's individual suit against First Union.  The district court denied the motions for intervention as a matter of right under Fed. R. Civ. P. 24(a) and permissive intervention under Fed. R. Civ. P. 24(b).  The plaintiffs now appeal this denial.[4]

II.  Jurisdiction

Orders denying a motion for intervention are not final orders.  EEOC v. Eastern

---

[2] Stone filed a charge of age discrimination with the EEOC in November 1992.

[3] Plaintiffs suing under the Age Discrimination in Employment Act (ADEA) must use an opt-in mechanism rather than the opt-out procedure allowed under Fed. R. Civ. P. 23.  Hipp v. Liberty Nat'l Life Ins., 252 F.3d 1208, 1216 (11th Cir. 2001).

[4] The named plaintiff's suit against First Union was scheduled to go to trial, but those proceedings have been stayed pending this appeal.

Airlines, 736 F.2d 635, 637 (11th Cir. 1984); see also 29 U.S.C. § 1291 (stating that circuit courts have jurisdiction to review final decisions of district courts). Nonetheless, under the aptly-named "anomalous rule," this court has provisional jurisdiction to review the district court's denial of a motion to intervene based on right. Eastern Airlines, 763 F.2d at 637; see also AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361 F.3d 1305, 1309 n.4 (11th Cir. 2004); FTC v. Am. Legal Distrib. Inc., 890 F.2d 363, 364 (11th Cir. 1989). If the district court erred in denying intervention based on right, this court has jurisdiction to correct the error. Eastern Airlines, 763 F.2d at 637. If the district court did not err, however, then this court's jurisdiction "evaporates." Id.

The court also has jurisdiction if the district court abused its discretion in denying permissive intervention. Stallworth v. Monsanto Co., 558 F.2d 257, 263 (5th Cir. 1977) (holding that the court had jurisdiction to review the denial of permissive intervention where the plaintiffs requested intervention based on right and permission).[5] In Davis v. Butts, this court appears to have revised the Monsanto rule, holding that there is no appellate jurisdiction where the plaintiffs requested permissive intervention alone. 290 F.3d 1297, 1299 (11th Cir. 2002). The Davis

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

decision, however, did not alter this court's jurisdiction to review denials of permissive intervention if the plaintiffs requested intervention based on right and permission. Id. Here, the plaintiffs appeal the denial of their motion for intervention based on right and permission, and, thus, we have jurisdiction to hear both claims.

III.  Intervention Based on Right

Rule 24(a)(2) permits plaintiffs to intervene as a matter of right under certain conditions:

> Upon timely application anyone shall be permitted to intervene in an action…(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).  This court has interpreted this rule to require a party seeking intervention of right to demonstrate that: "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit."  Worlds v. Dept. of Health and Rehabilitative Servs., 929 F.2d 591, 593 (11th Cir. 1991) (citing Chiles v. Thornburg,

5

865 F.2d 1197 (11th Cir. 1989)).

Here, only the third and fourth elements are contested. Neither party contends that the motion to intervene was untimely, and First Union concedes that the plaintiffs have an interest in the litigation. The parties, however, disagree over the two remaining elements of Rule 24(a)(2): (1) whether the opt-in plaintiffs' interests are impaired or impeded by Stone's individual litigation, and (2) whether the opt-in plaintiffs' interests are adequately represented by Stone.

### A. Impairment of Interest

The district court held that the plaintiffs' interests were not impaired by the litigation of Stone's case for two reasons. First, the district court determined that any rulings from the Stone litigation would not injure the remaining plaintiffs through stare decisis. The court had decertified the class because the putative class members' claims were not sufficiently similar. Consequently, the district court ruled that the issues raised in litigation would not be sufficiently similar to create potential stare decisis concerns.[6]

_____

[6] The district court stated:

> Moreover, the Court is not persuaded by Plaintiffs' argument that the application of stare decisis supports their impairment argument. The Court is not provided with specific examples of similar issues of stare decisis present here. The case cited by Plaintiffs in support of this argument, Sierra Club v. Glickman, 82 F.3d

Second, the district court determined that the opt-in plaintiffs would not be injured by their inability to "piggyback" on Stone's timely filed complaint with the EEOC. The district court reasoned that the plaintiffs, who had failed to file EEOC claims, were able to join the suit only because of the conditional class certification. The district court, thus, determined that the inability to piggyback was not an impairment because it simply withdrew a benefit that had been conditional on keeping class status.

We review de novo the district court's denial of a motion to intervene based on right. Georgia v. U.S. Army Corp of Eng'rs, 302 F.3d 1242, 1249 (11th Cir. 2003) (citing Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508, 1512 (11th Cir. 1996)).

We disagree with the district court that the plaintiffs in this case would not, as

---

106 (5th Cir. 1996), is inapposite. In Sierra Club, a suit was brought by farmers seeking to intervene in a suit by an environmental group to enjoin an agency from overpumping an aquifer. The court in that case concluded that the potential stare decisis issues supported the impairment prong of intervention because a finding of a threat would have affected contracts that farmers had in place regarding the aquifer. In this case, however, the disposition of an individual age discrimination case, which the Court has held by previous Order is not sufficiently related to putative class members' claims to support collective action, does not present similar issues of stare decisis. In their Reply, Plaintiffs state that while other courts "would not technically be bound by any decisions by this Court or this jury that go against Ms. Stone . . . any such decisions would be considered persuasive and raise issues of comity." The Court disagrees with this statement, particularly when the facts surrounding the Plaintiffs' claims vary. Moreover, the Court notes that Plaintiffs themselves ultimately concede that other courts "would not be compelled to make the same decision against any of the Opt-In Plaintiffs."

Stone v. First Union Corp., 216 F.R.D. 540, 557 (S.D. Fla. 2001).

a practical matter, be impaired by the potential stare decisis effects of any rulings on Stone's suit against First Union. This court previously has found that the potential for a negative stare decisis effect "*may* supply that practical disadvantage which warrants intervention of right." Chiles v. Thornburgh, 865 F.2d 1197, 1214 (11th Cir. 1989). For instance, in Chiles, detainees in an INS facility in Dade County sought to intervene in Senator Chiles's lawsuit challenging the federal government's operation of the detention center. There, this court explained that the potential stare decisis effects of Senator Chiles's suit would impair the detainees' attempts to challenge the facility as well:

> We think the detainees are so situated that the disposition of the lawsuit will, as a practical matter, impair their ability to protect their interests. As we have already discussed, the detainees are confined in the institution whose operation is being challenged. There is therefore a conjunction of a claim to and an interest in the very transaction which is the subject of the main action, and *the stare decisis effect of a decision suggests the practical disadvantage requisite for intervention*. Where a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential stare decisis effect may supply that practical disadvantage which warrants intervention as of right. Atlantis Development Corp. v. United States, 379 F.2d 818, 829 (5th Cir.1967). *The detainees' ability to litigate the government's operation of Krome in a separate lawsuit might be an exercise in futility if the instant lawsuit was decided in favor of the government.*

Chiles, 865 F.2d at 1214 (emphasis added); see also Georgia v. United States Army

<u>Corp of Eng'rs</u>, 302 F.3d 1242 (11th Cir. 2003).[7]

Although the potential for negative stare decisis effects does not automatically grant plaintiffs the right to intervene, the practical impairment the plaintiffs may face here is significant. The plaintiffs are all alleging that the same First Union policy violated the ADEA and led to their injury. Consequently, one court's ruling on whether the bank's policy, as a matter of law, was in violation of the ADEA could influence later suits. Although a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects. We find that these effects are sufficiently significant to warrant intervention.

On a related issue, we note that the plaintiffs may be allowed to piggyback onto Stone's timely filed EEOC complaint as they were when the class was conditionally certified, although it is unrelated to the decision to allow them to intervene. ADEA plaintiffs, who are denied class action status or denied the right to intervene in a lawsuit, may nonetheless piggyback on a timely filed EEOC letter. In <u>Calloway v. Partners Nat'l Health Plans</u>, 986 F.2d 446 (11th Cir. 1993), this court determined that

_____

[7] In <u>Georgia v. United States Army Corp of Engineers</u>, Florida sought to intervene as a defendant in Georgia's suit to force the Army Corp of Engineers to release more water from Lake Lanier. 302 F.3d at 1248. The suit would affect the water in the Apalachicola River, a major source of water for Florida. <u>Id.</u> at 1252. Georgia argued that Florida's interests were not impaired by Georgia's suit because Florida could always sue Georgia separately under the ACF Compact. <u>Id.</u> at 1253. This court rejected Georgia's argument and held that Florida was entitled to intervene. The ACF Compact is based on "equitable allocation" principles that take into account the current allocation of water. <u>Id.</u> at 1255. Because Georgia's suit, if successful, would lead to a reallocation of water, the court found that Florida's interest could be impaired in later litigation. <u>Id.</u>

a plaintiff, who was not allowed to intervene in a lawsuit where another plaintiff had a timely filed EEOC letter, was nonetheless permitted to piggyback on the EEOC letter if (1) the letter was valid and (2) the discriminatory treatment was similar and took place in the same time frame. There, the court stated that this "single-filing" rule "comports with the purpose of the EEOC charge requirement by ensuring that the settlement of grievances will be attempted first through the EEOC. Moreover, there is no reason to distinguish between a plaintiff who successfully intervenes and one who does not." Id. at 450.

Calloway addressed a Title VII claim, but the single-filing rule has been extended to ADEA suits. In Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 557 (11th Cir. 1997), this court stated:

> In fashioning the ADEA statute of limitations, Congress carefully balanced the interests of plaintiffs and the interests of employers. A plaintiff who has not filed an individual EEOC charge may invoke the single-filing rule where such plaintiff is similarly situated to the person who actually filed an EEOC charge, and where the EEOC charge actually filed gave the employer notice of the collective or class-wide nature of the charge. In such circumstances, it is reasonable from the perspective of the employer's interests and the interests of economy of administration within the agency to permit such a plaintiff to rely upon the other claimant's EEOC charge.[8]

---

[8] In Gitlitz, the court went on to say that if the plaintiff had filed an EEOC letter himself and then failed to file a timely suit, he could not piggyback on another employee's timely filed suit. 129 F.3d at 558. Thus, a plaintiff can only piggyback on a timely EEOC letter if he did not receive his own letter. Here, there is no evidence that any of the plaintiffs would fall into this category. If one did, however, he would not be allowed to piggyback as an intervener and, thus,

Consequently, here, the district court should consider whether the plaintiffs should be allowed to piggyback on Stone's claim as interveners.

## B. Adequate Representation

To intervene based on right, the plaintiffs also must demonstrate that Stone does not adequately represent their interests. Fed. R. Civ. P. 24(a)(2). There is a presumption of adequate representation where an existing party seeks the same objectives as the interveners. Clark v. Putnam County, 168 F.3d 458, 461 (11th Cir. 1999). This presumption is weak and can be overcome if the plaintiffs present some evidence to the contrary. Id. If the interveners overcome this presumption, the court "returns to the general rule that adequate representation exists '[1] if no collusion is shown between the representative and an opposing party, [2] if the representative does not have or represent an interest adverse to the proposed intervener, and [3] if the representative does not fail in fulfillment of his duty.'" Id. Interveners need only show that the current plaintiff's representation "may be inadequate," however, and the burden for making such a showing is "minimal." Id.

On this issue, this court's decision in Chiles is particularly instructive because one group was allowed to intervene and another was not based on whether the current

his interests would not be impaired by a denial of intervention.

11

plaintiffs would adequately represent their interests. There, as stated above, Senator

Chiles brought a suit against the INS for its use of the Krome detention facility in

Dade County. The district court permitted Dade County and the Governor of Florida

to intervene in the suit, but denied the same request by two additional groups,

detainees being held at Krome and a Dade County homeowners' association. On

appeal, this court permitted the detainees to intervene because Dade County did not

adequately represent their interests but denied the homeowners' association's motion

because Dade County adequately represented their interests. Chiles, 865 F.2d at

1214-15.

In Chiles, this court's reasoning was based on the similarity of the interests

between would-be-interveners and the current plaintiffs. Id. This court decided that

the detainees had similar, but not identical interests, to the county, and, thus, the

county might not represent the detainees' interests. For instance, we noted:

> Dade County may decide not to emphasize the plight of the aliens held
> at Krome but focus instead on the effect that Krome has on those who
> live outside its walls. After all, Dade County is mainly concerned with
> the expenditures that have to be made because of Krome. We conclude
> that this possibility sufficiently demonstrates that the detainees' interests
> are not adequately represented.

Id. at 1215. By contrast, the homeowners' association had identical interests to the

county, and, thus, the county provided adequate representation. We explained that "[u]nlike the detainees, the homeowners and the Homeowners' Association have an interest which is identical to Dade County: the prevention of riots and escapes from Krome and the protection of nearby residents. There is no indication whatsoever that the representation rendered by Dade County would be inadequate." Id. (citation omitted).

Here, the district court has already held that Stone is not an adequate representative plaintiff for class action purposes because the plaintiffs do not have sufficiently similar claims against the bank. Although all of the plaintiffs allege to have been subject to the same plan of age discrimination, the manner in which they were discriminated against may not be identical. Thus, under Chiles, the plaintiffs are permitted to intervene to represent their interests where different than Stone's interests. For instance, the plaintiffs may wish to emphasize different aspects of First Union's employment policies. We hold that the difference in interests is sufficient to overcome the weak presumption of adequate representation.

For the above reasons, we reverse the district court and hold that the plaintiffs can intervene as a matter of right.

REVERSED and REMANDED

13