[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11710
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cv-01622-AEP

TECHNOLOGY TRAINING ASSOCIATES, INC.,
LARRY E. SCHWANKE, D.C.,
Individually and as the representative of a class of similarly-situated persons,
d.b.a. Back to Basics Family Chiropractic,

Plaintiffs-Appellees,

CIN-Q AUTOMOBILES, INC.,
MEDICAL & CHIROPRACTIC CLINIC, INC.,

Intervenors-Appellants,

versus

BUCCANEERS LIMITED PARTNERSHIP,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 26, 2017)

Before ED CARNES, Chief Judge, MARTIN, and ANDERSON, Circuit Judges.

ED CARNES, Chief Judge:

In 2013 Cin-Q Automobiles, Inc., filed a complaint on behalf of a putative class, alleging that Buccaneers Limited Partnership was responsible for unsolicited faxes that violated the Telephone Consumer Protection Act, 47 U.S.C. § 227. The two sides litigated that case, which we will call the Cin-Q case, for three years, with Medical & Chiropractic Clinic, Inc., eventually joining as a second named plaintiff. In 2016 Technology Training Associates, Inc., and Larry E. Schwanke, D.C. (the plaintiffs in this case), filed a complaint on behalf of the same class based on the same allegedly unlawful acts by Buccaneers, and soon after doing so announced that they had reached a settlement with Buccaneers disposing of their claims in exchange for nearly $20 million in damages.

After the announcement of that settlement, Cin-Q and Medical & Chiropractic Clinic — whom we will call "the movants" — moved to intervene in the current case. The district court denied that motion and preliminarily

2

approved the plaintiffs' settlement agreement.  The movants appeal from the denial of their motion to intervene.[1]

### I.

In 2009 and 2010 Buccaneers, through a fax broadcaster, sent out three sets of faxes advertising tickets to see Tampa Bay Buccaneers football games.  Cin-Q, which had received at least one of those faxes, brought suit on behalf of a putative class.  It alleged that Buccaneers had sent unsolicited faxes to more than 180,000 recipients and that the class was entitled to $500 per violation in statutory damages.  After Medical & Chiropractic Clinic joined as a second named plaintiff and the parties conducted discovery, both sides filed cross-motions for summary judgment.  The Cin-Q court denied those motions.  The parties then entered into extended settlement negotiations.  However, they were unable to come to an agreement, and in March 2016 the movants filed a motion for class certification in the Cin-Q case.

The movants were represented by the law firm Anderson + Wanca.  While the class certification motion was pending, an attorney at that firm, David Oppenheim, left and joined another firm called Bock Hatch.  There he took part in an email discussion with Phil Bock, a partner at Bock Hatch, about the Cin-Q case.

---

[1] "Although orders denying a motion to intervene are not final orders, . . . we have provisional jurisdiction to determine whether the district court erroneously concluded that the appellants were not entitled to intervene as of right." Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1301 (11th Cir. 2008) (quotation marks omitted).

Oppenheim told Bock that the movants' remaining counsel "want[ed] to set a record" by extracting more than $75 million in damages from Buccaneers.  Bock responded that Oppenheim "could come forward with another class member and settle [the] case over the objections of [Anderson + Wanca] and also over the objections of [Oppenheim's] former individual client."  Bock opined that Oppenheim's "penultimate [sic] duty is to the class, not to the named plaintiff and certainly not to some greedy asshole who is not a class member and is just sitting in an office in [R]olling Meadows," referring to the movants' remaining counsel. He went further, suggesting that Bock Hatch could "make it even more Machiavellian" by bringing Anderson + Wanca's local counsel in on the potential separate class action that Bock was proposing.  After that exchange, Bock sent an email to several other Bock Hatch lawyers that read:  "Hmm.  [Movants' counsel] holding out for a record settlement . . . .  We could find a plaintiff and approach the defendant about settling?  Lol."

Sure enough, the plaintiffs, represented by Bock Hatch, filed a class action complaint in the current case about two months later.  Two days after that they filed an unopposed motion for preliminary approval of class action settlement.  In the motion the plaintiffs announced that they had reached a settlement with Buccaneers under which the class would receive up to $19.5 million in damages. The settlement agreement also provided that up to twenty-five percent of the total

4

settlement amount could be awarded as attorney's fees, and the motion stated that class counsel would request incentive awards for the named plaintiffs. Because the plaintiffs filed this case outside the four year limitations period for TCPA claims, the settlement agreement also contained a waiver by Buccaneers of any statute of limitations defense.

After the complaint and the motion for preliminary approval of the settlement were filed in this case, the Cin-Q court stayed consideration of the movants' class certification motion in that case. In the wake of those developments, the movants moved to intervene in this case under Federal Rule of Civil Procedure 24(a)(2), intervention as of right, and Rule 24(b)(2), permissive intervention. They contended that this case was an example of a "reverse auction," in which a defendant picks out a plaintiff with weaker claims and weaker counsel in an effort to negotiate a more favorable settlement.

The district court denied the movants' motion to intervene. It also preliminarily certified a class of all persons who received Buccaneers' commercial faxes between 2009 and 2010 (with some exceptions not relevant here) and preliminarily approved the plaintiffs and Buccaneers' settlement.

## II.

"We review the denial of a motion to intervene [as] of right de novo. We review subsidiary findings of fact for clear error." Fox v. Tyson Foods, Inc., 519

5

F.3d 1298, 1301 (11th Cir. 2008) (citation omitted).  Parties seeking to intervene under Rule 24(a)(2) must show that:

> (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

Stone v. First Union Corp., 371 F.3d 1305, 1308–09 (11th Cir. 2004).

The first two prongs are satisfied in this case:  the movants' motion was timely, and they have an interest in this case because, as class members, they will be bound by the terms of the settlement if it is approved and judgment is entered, see Juris v. Inamed Corp., 685 F.3d 1294, 1312 (11th Cir. 2012).  However, the district court concluded that the movants did not satisfy the third prong.  It explained that Rule 23 already provides procedural protections, such as the right to object at a "fairness hearing," and it noted that it could award attorney's fees out of the settlement fund to the movants' counsel.  In light of those facts, it concluded that the movants' ability to protect their interest would not be "impede[d] or impair[ed]" if intervention were denied.

But under that logic class members could never intervene in a class action because they would always have recourse to Rule 23 procedural protections and would therefore always fail to satisfy the third prong.  Such a conclusion cannot be squared with the Supreme Court's recognition that "[m]embers of a class have a

6

right to intervene if their interests are not adequately represented by existing parties." Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 594, 133 S. Ct. 1345, 1349 (2013) (quoting 5 Alba Conte & Herbert Newberg, Newberg on Class Actions § 16:7, at 154 (4th ed. 2002)). And the district court's conclusion conflicts with the advisory committee note to the 1966 amendment to Rule 24 (the last substantive amendment to Rule 24(a)(2)), which explained that a class member "should, as a general rule, be entitled to intervene in the action," unless the current parties adequately represent him. Fed. R. Civ. P. 24 advisory committee's note to the 1966 amend. As a result, we do not agree that Rule 23's procedural protections mean the movants fail to satisfy Rule 24(a)(2)'s third prong.

Taking a different tack, Buccaneers argues that the former Fifth Circuit's decision in United States v. City of Jackson, 519 F.2d 1147 (5th Cir. 1975), requires us to hold that the third prong is not met here.[2] But the Jackson case did not involve class members who would have been bound by the judgment; instead, it involved a consent decree entered into by the United States and the City. Id. at 1149–50. Under the consent decree, a discriminated-against employee could choose to sign a waiver of his claims in exchange for a preset amount of backpay, but if he did not, the consent decree would not bind him in any way. Id. at 1151–

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

52. Because the consent decree had no substantive effect on non-signing employees, we held that it would not impair or impede non-signing employees' interests. See id. at 1151–53. That holding is not relevant to cases like this one where the judgment will definitively determine the class members' substantive rights.[3] In sum, the risk that the movants will be bound by an unsatisfactory class action settlement satisfies Rule 24(a)(2)'s third prong. See In re Cmty. Bank of N. Va., 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation."); cf. Knowles, 568 U.S. at 594, 133 S. Ct. at 1349 (indicating that an absent class member's right to intervene turns on whether it can satisfy the adequate representation prong, not on whether it can satisfy the second and third prongs).

That leaves the fourth prong. The intervenors and the existing plaintiffs are pursuing the same general objective — vindicating the class' rights under the TCPA — so we presume that the plaintiffs' representation is adequate. See Clark v. Putnam County, 168 F.3d 458, 461 (11th Cir. 1999). "But the presumption is weak; in effect, it merely imposes upon the proposed interven[o]rs the burden of coming forward with some evidence to the contrary." Id. Here, the movants

---

[3] Buccaneers also relies on our decision in Grilli v. Metropolitan Life Insurance Co., 78 F.3d 1533 (11th Cir. 1996). But in that case the district court had based its decision on a finding that the movants' interest was adequately represented by the existing parties, a finding that this Court did not disturb. See id. at 1536, 1538. The Grilli holding does not extend to cases like this one in which the existing parties do not adequately represent the movants' interest.

rebutted the presumption by pointing to the emails that showed that the plaintiffs' counsel was engaged in a "Machiavellian" plan to undercut the movants' negotiating position. That is more than "some evidence" that the plaintiffs are not acting as adequate representatives of the movants' interests. See id.

Because the movants can rebut the presumption, we "return[ ] to the general rule that adequate representation exists if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed interven[o]r, and if the representative does not fail in fulfillment of his duty." Id. (quotation marks omitted). "Showing any of these factors is not difficult. The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Id. (some quotation marks omitted).

The movants have met the "minimal" burden of showing that plaintiffs' representation of their interests "may be" inadequate. As we have explained, a representative party's "greater willingness to compromise can impede [it] from adequately representing the interests of a nonparty." Id. at 462. That is the case here. The plaintiffs have a greater incentive to settle because their claims may be barred by the statute of limitations if they cannot secure a waiver from Buccaneers, while the movants have no statute of limitations issue. Although the parties

9

fiercely contest whether the plaintiffs' claims are actually time barred, the <u>risk</u> that they could be gives the plaintiffs a greater incentive to settle as compared to the movants. Which is evidenced by the plaintiffs' getting a waiver of the statute of limitations as part of the settlement.

More broadly, the record appears to show that the plaintiffs' counsel, Bock Hatch, deliberately underbid the movants in an effort to collect attorney's fees while doing a fraction of the work that the movants' counsel did. If, as it appears, Bock Hatch was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement possible for the class, it violated its ethical duty to the class. <u>See</u> Am. Bar Ass'n, <u>Ethical Guidelines for Settlement Negotiations</u> § 4.2.2 (2002) ("When an attorney's fee is a subject of settlement negotiations, a lawyer may not subordinate the client's interest in a favorable settlement to the lawyer's interest in the fee."). It is plain from the record that during the negotiations the interests of the named plaintiffs and of Bock Hatch were aligned with those of Buccaneers and adverse to the movants' interests. Given that, the plaintiffs cannot be expected to adequately represent the movants' interests. The movants satisfied Rule 24(a)(2)'s fourth prong.

For those reasons, the movants met Rule 24(a)(2)'s requirements.  We remand the case with instructions for the district court to grant the movants' motion to intervene as of right.[4]

**REVERSED AND REMANDED.**

---

[4] Because we determine that the movants are entitled to intervene under Rule 24(a)(2), we do not reach the issue of whether the district court abused its discretion in refusing to permit intervention under Rule 24(b)(2).

11