[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10608

_____

Agency Docket No. 12942-09

GEORGE C. HUFF,

Petitioner,

GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,

Movant-Appellant,

versus

COMMISSIONER OF IRS,

Respondent-Appellee.

_____

No. 11-10617

_____

Agency Docket No. 11810-10

BARRY P. COOPER,

Petitioner,

GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,

Movant-Appellant,

versus

COMMISSIONER OF IRS,

                                                    Respondent-Appellee.

_____

No. 11-10618
_____

Agency Docket No. 456-10

PATRICK A. MCGROGAN,

                                                                    Petitioner,

GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,

                                                          Movant-Appellant,

versus

COMMISSIONER OF IRS,

                                                    Respondent-Appellee.
_____

Petitions for Review of a Decision of the
United States Tax Court
_____

(February 20, 2014)

Before TJOFLAT, HULL, and KRAVITCH, Circuit Judges.

TJOFLAT, Circuit Judge:

In these consolidated appeals, we review the United States Tax Court's denial of the Virgin Islands' motion to intervene in George Huff's, Patrick McGrogan's, and Barry Cooper's (the "Taxpayers") proceedings in the Tax Court.[1] After reviewing the record and considering the parties' arguments, we hold that the Tax Court erred in denying the Virgin Islands' motions to intervene. We accordingly reverse the Tax Court's rulings and remand these cases with instructions that the Tax Court grant the Virgin Islands intervention.

I.

The United States and Virgin Islands operate separate but interrelated tax systems—both based on the rules in the Internal Revenue Code ("I.R.C.").[2] See 48 U.S.C. § 1397. The Tax Court proceedings are the product of a disagreement over which government should have received taxes from these Taxpayers, and in what amount.

The Taxpayers are United States citizens who claimed to be "bona fide residents" of the Virgin Islands in 2002, 2003, and 2004. Under the rules governing United States and Virgin Islands taxation, bona fide Virgin Islands

---

[1] We have jurisdiction over the consolidated appeals pursuant to 26 U.S.C. § 7482(a)(1). Venue is proper in this court under 26 U.S.C. § 7482(b)(1)(A) because the Taxpayers are all now legal residents of Florida.

[2] To apply the I.R.C. rules as its own, the Virgin Islands substitutes "Virgin Islands" for "United States" as the taxing authority in the Code. See Danbury, Inc. v. Olive, 820 F.2d 618, 620–21 (3d Cir. 1987). As a result, the Virgin Islands tax laws are generally referred to as the "Mirror Code."

3

residents satisfy both their United States and Virgin Islands tax obligations by filing a return with the Virgin Islands Bureau of Internal Revenue ("BIR") and paying taxes on their worldwide income to the Virgin Islands. See 26 U.S.C. § 932(c); Chase Manhattan Bank v. Virgin Islands, 300 F.3d 320, 322 (3d Cir. 2002). By doing so, the Virgin Islands residents are relieved of any obligation to file a return with the Internal Revenue Service ("IRS") or pay taxes to the United States. Vento v. Director of V.I. Bureau of Internal Revenue, 715 F.3d 455, 465 (3d Cir. 2013).

In an attempt to comply with these rules, the Taxpayers filed returns with the BIR for calendar tax years 2002, 2003, and 2004. The Taxpayers reported their worldwide income, which consisted of income from both United States and Virgin Islands sources, and paid taxes on that income to the Virgin Islands. None of the Taxpayers filed a return with the IRS.

In 2009 and 2010, the IRS issued deficiency notices to the Taxpayers for tax years 2002, 2003, and 2004. The IRS claimed, first, that the Taxpayers were not bona fide Virgin Islands residents during those tax years and, therefore, they should have filed returns with the IRS and paid taxes to the United States on the income they reported from United States sources.[3] Second, the IRS claimed that

---

[3] Virgin Islands nonresidents who earn income in the Virgin Islands are required to file a return with both the BIR and the IRS; they pay taxes to the Virgin Islands on their Virgin Islands income and taxes to the United States on the rest. 26 U.S.C. § 932(a), (b).

4

some of the Taxpayers' income that they classified as Virgin Islands income on their BIR returns was, in fact, United States income and, therefore, the Taxpayers should have paid taxes to the United States on that income too. Rather than crediting the Taxpayers' federal tax liability with the taxes paid to the Virgin Islands (which the IRS claimed should have been paid to the United States), the IRS issued a deficiency notice for the full amount owed to the United States, plus penalties for failing to file an IRS return and for delinquent payment.

Because the IRS issued the deficiency notices more than three years after the Taxpayers filed their returns, the IRS's collection efforts would normally be barred by the three-year limitations period in I.R.C. § 6501, which runs from the time a taxpayer files "the return required to be filed" for a particular tax year. 26 U.S.C. § 6501(a). According to the IRS, its collection efforts are not barred because the Taxpayers failed to file returns with the IRS—returns they would have been required to file if the claims in the IRS's deficiency notices were in fact true.

The Taxpayers petitioned the Tax Court, challenging the IRS's deficiency notices as time barred and, in the alternative, as incorrect.[4] The Virgin Islands moved to intervene in the cases, the Tax Court denied its motions, and the Virgin Islands brought these appeals.

---

[4] Barry Cooper only challenged the IRS deficiency notices for 2002 and 2003.

II.

The Tax Court Rules of Practice and Procedure do not provide general rules for intervention by third parties,[5] but Tax Court Rule 1(b) explains that "[w]here in any instance there is no applicable rule of procedure, the Court or the Judge before whom the matter is pending may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand."

The Virgin Islands moved to intervene in the Taxpayers' cases both as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure and permissively under Rule 24(b)(2). Rule 24(a)(2) allows a third party to intervene as a matter of right if the third party has "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Rule 24(b)(2) gives the court discretion to permit a government entity to intervene if an existing party's claim or defense is based on a statute or regulation administered by the entity. "In exercising its [Rule 24(b)(2)] discretion, the court must consider

---

[5] The Tax Court Rules do grant a right to intervene to specified third parties in certain types of tax proceedings. See, e.g., Tax Ct. R. 216(a), 225, 245(a), 325(b). None of these rules apply in the Taxpayers' cases.

6

whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Tax Court denied the Virgin Islands' motions to intervene with virtually identical orders—each citing to the reasoning in Appleton v. C.I.R., 135 T.C. 461 (2010) (hereinafter "Appleton I"), in which the Tax Court denied the Virgin Islands' motion to intervene in an analogous Tax Court case. In evaluating the Virgin Islands' request for Rule 24(a)(2) intervention, the Appleton I court explained that "[a] review of this Court's jurisprudence reveals that the Court has never recognized intervention of a third party as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2)." 135 T.C. at 466. But, the court did not decide whether Rule 24(a)(2) is available in Tax Court because it held that, even if it were available, the Virgin Islands did not have a qualifying interest that would allow it to intervene. Id. at 466–68. The court also declined to grant permissive intervention because, in its assessment, the Virgin Islands "has neither demonstrated that its participation as a party is necessary to advocate for an unaddressed issue nor shown that its intervention will not delay the resolution of this matter." Id. at 469.

After the Tax Court cited to Appleton I in its orders in the Taxpayers' cases, the Third Circuit reviewed the Appleton I decision and held that the Tax Court abused its discretion in denying the Virgin Islands' motion for permissive

7

intervention.[6]  Appleton v. C.I.R, 430 F. App'x 135, 138–39 (3d Cir. 2011) (hereinafter "Appleton II").  The Third Circuit concluded that the Tax Court had applied the wrong legal standard under Rule 24(b)(3), which requires a court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Id. at 137 (quoting Fed. R. Civ. P. 24(b)(3)) (emphasis added).  In requiring the Virgin Islands to show that its participation was "necessary" and "will not delay" the proceedings, the Tax Court had effectively raised the standard for permissive intervention.  Id. at 138.

Our analysis might be brief if not for the IRS's ongoing efforts to defend Appleton I.  Before the Third Circuit decided Appleton II, the Tax Court cited to Appleton I in several other cases like the Taxpayers' in orders denying the Virgin Islands' motion to intervene.  After Appleton II, the IRS, taking the position that Appleton II had been wrongly decided, continued to defend the Appleton I decision.  See generally IRS Office of Chief Counsel, Action on Decision No. 2011-04 (Nov. 18, 2011) ("The Service will not follow the Third Circuit's nonprecedential opinion in Appleton [II] in any pending or future litigation, including any case appealable to the Third Circuit.").  As a result, two more courts of appeals have had to deal with Appleton I.  The Eighth Circuit agreed with the Third Circuit's analysis and held that the Tax Court, in Appleton I, applied the

---

[6] The Third Circuit had jurisdiction over the appeal because the taxpayer Arthur Appleton was a resident of the Virgin Islands at the time.  See 26 U.S.C. § 7482(b)(1)(A).

8

wrong legal standard for permissive intervention. Coffey v. C.I.R., 663 F.3d 947, 951–52 (8th Cir. 2011). But the Fourth Circuit split from the Third and the Eighth, holding that the Tax Court applied the correct permissive intervention standard and also correctly denied intervention of right. McHenry v. C.I.R., 677 F.3d 214, 224–27 (4th Cir. 2012).

Thus, a single Tax Court decision has produced a split of authority in an area of law in which uniformity is of particular importance.[7] As it stands, the Virgin Islands' ability to intervene in a Tax Court case depends on the geographic residency of the taxpayer.

With the benefit of our sister courts' reasoning, we now turn to our own examination of Appleton I. We begin with the Tax Court's decision to deny the Virgin Islands' intervention under Rule 24(a)(2).

---

[7] As the Third Circuit has explained:

It is possible that multiple courts possessing jurisdiction over Virgin Islands tax law may reach conflicting conclusions. The same possibility inheres in the current jurisdictional structure of federal tax law. In that context, courts "temper the independence of the analysis in which [they] engage by according great weight to the decisions of other circuits on the same question." They do so because "the need for uniformity of decision applies with special force in tax matters."

Birdman v. Office of the Governor, 677 F.3d 167, 177 (3d Cir. 2012) (quoting Wash. Energy Co. v. United States, 94 F.3d 1557, 1561 (Fed. Cir. 1996)).

III.

We review a trial court's denial of intervention of right de novo. Sierra

Club, Inc. v. Leavitt, 488 F.3d 904, 909–10 (11th Cir. 2007). Rule 24(a)(2)

requires a third party moving for intervention of right show:

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1302–03 (11th Cir. 2008) (quoting

Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989)). It is not contested

that the Virgin Islands' motion was timely, so we discuss the Virgin Islands'

interests in the Tax Court proceedings, whether its interests would be practically

affected by the Virgin Islands' exclusion, and whether those interests are

adequately represented by the Taxpayers.

A.

The Appleton I court held that the Virgin Islands did not have an interest in

the Tax Court cases that would support intervention of right under Rule 24(a)(2).

Intervention of right is only available if the interest asserted is "direct, substantial,

[and] legally protectable." Athens Lumber Co., Inc. v. Fed. Election Comm'n, 690

F.2d 1364, 1366 (11th Cir. 1982) (citations omitted). In other words, "the

intervenor must be at least a real party in interest in the transaction which is the

subject of the proceeding." Id. (citations omitted). In deciding whether a party has a protectable interest, though, courts must be "flexible" and must "focus[] on the particular facts and circumstances" of the case. Chiles, 865 F.2d at 1214. To provide a concrete starting point for our analysis, we begin by explaining the practical impact Tax Court decisions adverse to the Taxpayers will have on the Virgin Islands' interests.

The root of the controversy that led to the IRS deficiency notices and the resulting Tax Court proceedings is a factual disagreement between the United States and the Virgin Islands over the Taxpayers' residency and the source of the Taxpayers' income. The Virgin Islands collected taxes on all of the Taxpayers' income based on the BIR's determination that the Taxpayers were bona fide Virgin Islands residents during the tax years in question. The IRS does not contest that, if the Taxpayers were bona fide Virgin Islands residents, then they owed all of their taxes on all of their income to the Virgin Islands.[8] Instead, the IRS seeks to

_____

[8] The IRS asserts, as an alternative basis for its deficiency notices, that even if the Taxpayers were bona fide Virgin Islands residents, they underpaid the taxes due to the Virgin Islands. The IRS contends, then, that even if a taxpayer is a bona fide Virgin Islands resident and properly files his tax return with the BIR, the IRS has the authority to review the BIR's acceptance of the tax return and, if it believes the BIR should have issued a deficiency notice, the IRS can issue a deficiency notice and, in doing so, force the Taxpayer either to pay the deficiency to the IRS and sue for a refund in the U.S. District Court or contest the deficiency notice in the Tax Court. In other words, the IRS seeks to participate in the Virgin Islands tax system as a Monday morning quarterback. Moreover, the IRS says it can do this even though the § 6501 statute of limitations forecloses the BIR from issuing an identical deficiency notice. And the IRS steadfastly contends that the Virgin Islands is not entitled to intervention in the Tax Court. We doubt that Congress had such a scenario in mind in fashioning the I.R.C., but,

11

reclassify the Taxpayers as Virgin Islands nonresidents and some of their reported Virgin Islands income as United States income—thus allowing it to collect taxes on all of the Taxpayers' income except the remaining Virgin Islands income.

Ordinarily, when the IRS and BIR disagree over the residency status of a taxpayer or the source of particular items of his income, the two taxing agencies consult together to "endeavor to agree upon the facts and circumstances necessary to achieve consistent application of the tax laws of the respective Governments." Tax Implementation Agreement Between the United States of America and the Virgin Islands, Art. 6, ¶ 1 (1987), reprinted in 1989-1 Cum. Bull. 347, 350. If the taxpayer has already paid taxes to one or both of the governments, but the agencies agree that the taxpayer should have paid different amounts to each, then the taxpayer may claim a refund from the "overpaid" government or a credit from the "underpaid" government to prevent his income from being taxed more than once. See, e.g., Rev. Proc. 2006-23, § 7.05, 2006-1 Cum. Bull. 900, 906.

If the agencies do not reach an agreement through the consultation process, then the taxpayer, who is caught in the middle, must establish his tax liability to the United States and the Virgin Islands in separate judicial proceedings—challenging

assuming that the IRS has the power to issue a deficiency notice on the Virgin Islands' behalf and that the Tax Court has jurisdiction to determine the validity of such deficiency, the Virgin Islands case for intervening would be even stronger than it is under the IRS's primary argument (that the Taxpayers were not bona fide Virgin Islands residents) since the IRS would be seeking to collect taxes that were owed to the Virgin Islands and would be statutorily bound to transfer any amount collected from the Taxpayers into the Virgin Islands treasury. See 26 U.S.C. § 7654(a); 48 U.S.C. § 1642.

an IRS deficiency in Tax Court or suing the United States for a refund in District Court or in the Court of Federal Claims, 26 U.S.C. § 6213(a); 28 U.S.C. § 1346(a)(1), and challenging a BIR deficiency or suing the Virgin Islands for a refund in the Virgin Islands District Court, 48 U.S.C. § 1612(a). While each case technically only establishes the taxpayer's liability to the United States or the Virgin Islands, the courts are not blind to the consequences of their factual findings or the reality that the other court will consider the tax obligations of the same taxpayer, on the same income, to a different government. To avoid subjecting these taxpayers to double taxation, a court may either limit the independence of its factual analysis—giving deference to the other court's findings regarding the same taxpayer—or it may grant the nonparty government intervention—thus ensuring that a single set of factual findings will bind both authorities by way of estoppel.

We take judicial notice of the fact that, when faced with a dispute over the residency status of another set of Virgin Islands taxpayers, the United States moved to intervene in the taxpayers' suit against the Virgin Islands. See Motion of the United States to Intervene, V.I. Derivatives, LLC v. Director of V.I. Bureau of Internal Revenue, D.V.I. No. 06-cv-00004, ECF No. 28 (May 16, 2008). In V.I. Derivatives, the Virgin Islands sought to tax certain taxpayers as bona fide residents and the United States sought to tax them as nonresidents. The taxpayers brought suit in the Virgin Islands District Court and the Tax Court. The United

13

States sought to intervene in the District Court case under Rule 24(a) and 24(b), explaining that, as a practical matter, "the resolution of the residency issue will determine which government authority—the United States or the Virgin Islands—is entitled to collect the resulting taxes that would be owed by [the taxpayers]." Memorandum in Support of Motion of United States of America to Intervene, V.I. Derivatives, D.V.I. No. 06-cv-00004, ECF No. 29, at 7 (May 16, 2008). Thus, the United States explained, its exclusion from the District Court case "would clearly impair the United States' ability to advocate for its position on residency in the [parallel Tax Court case]." Id. The Virgin Islands did not oppose the United States' motion to intervene, and the District Court granted the motion and went on to determine the taxpayers' residency with the benefit of both governments' participation. See V.I. Derivatives, LLC v. United States, Civ. No. 2006-12, 2011 WL 703835 (D.V.I. Feb. 18, 2011).

By contrast, the IRS has vigorously opposed the Virgin Islands' right to participate in a Tax Court case, even where the underlying dispute between the two governments is indistinguishable from the dispute in V.I. Derivatives. In its brief to this court, the IRS denies that the outcome of the Tax Court proceedings will have any effect on the Virgin Islands' administration of its "separate and autonomous system[]," and argues that "the IRS may seek to enforce federal tax laws against putative USVI residents[] without implicating the [Virgin Islands']

14

tax laws." IRS Brief, at 50–51. In light of the interrelationship between the United States and Virgin Islands tax systems and the practical consequences of the Tax Court's determinations regarding the Taxpayers' residence and source of income—which the United States relied on to support its intervention in V.I. Derivatives—we find the IRS's attempts to dismiss the Virgin Islands' interests in the Tax Court cases to be unpersuasive, bordering on disingenuous.

The IRS's opposition to the Virgin Islands' participation is made more untenable by the fact that its attempt to collect taxes beyond the normal three-year period ensures that the Tax Court is the only venue in which the Taxpayers' residency and the source of their income will be litigated. As noted above, a taxpayer who is caught in the middle of an IRS–BIR disagreement must normally sort out his tax liability through separate lawsuits against the two governments. Thus, under normal circumstances, the Taxpayers would challenge the IRS deficiency in Tax Court and sue the Virgin Islands for a refund in the Virgin Islands District Court. However, because the IRS issued its deficiency notices to the Taxpayers more than three years after they filed their returns with the BIR, the Taxpayers are barred by the three-year limitations period in I.R.C. § 6511 from suing the Virgin Islands for a refund. See 26 U.S.C. § 6511(a); see also Cooper v. C.I.R., 718 F.3d 216, 223 (3d Cir. 2013) ("Federal courts lack jurisdiction to entertain refund claims brought outside the statute of limitations." (citation

15

omitted)).  Thus, unless the Virgin Islands is allowed to intervene in the Tax Court proceedings, it will be denied the opportunity to defend the BIR's determinations in court.

That the Virgin Islands does not have to defend a refund suit brought by the Taxpayers is irrelevant.  If the Tax Court eventually determines that the Taxpayers were not bona fide residents, one of three things will occur: the IRS may ask the Virgin Islands to transfer over the portion of taxes that should have been paid to the United States; the Virgin Islands may choose to voluntarily refund the "overpaid" taxes as a matter of fairness; or the Virgin Islands may be forced to accept that the Taxpayers paid taxes twice on the same income.[9]  Thus, the Virgin Islands has an interest in the Tax Court proceedings for the same reason the United States had an interest in the Virgin Islands District Court proceedings in <u>V.I. Derivatives</u>: the court's findings have practical implications for the Virgin Islands' taxation of the same individuals.

The IRS's efforts to avoid the application of § 6501's limitations period strengthens the Virgin Islands' interests in the Tax Court proceedings.  The IRS

---

[9] In the IRS's brief, it attempts to dismiss the possibility of double taxation—which it created by issuing deficiency notices after the Taxpayers were barred from obtaining a refund of taxes paid to the Virgin Islands—by telling this court that "the IRS may grant a credit for the taxes paid to the USVI."  IRS Brief, at 50 n.23.  No existing Treasury regulations or published IRS guidance would require the IRS to grant a tax credit if it prevails in the Tax Court cases. Nonetheless, we take the IRS at its word; if the IRS prevails, we trust that, to prevent double taxation, the IRS will credit the Taxpayers' liability to the United States.

16

claims that the Taxpayers' BIR returns did not start to run the § 6501 limitations period because they should have also filed a return with the IRS. But the Taxpayers only had to file a return with the IRS if the allegations in the IRS deficiency notices are true. Thus, the Taxpayers may only receive the "benefit" of § 6501 by disproving the IRS's allegations in the Tax Court.[10] If the Taxpayers disprove the IRS's claims, however, they will not need the statute of limitations' protection because they will have won on the merits. So, the IRS's preferred application of § 6501 would effectively deny all Virgin Islands taxpayers the benefit of the limitations period—the IRS would be able to go beyond the three-year time limit by simply alleging that a Virgin Islands taxpayer made a mistake.[11] If the IRS is permitted to issue deficiency notices in perpetuity based on its unilateral determinations regarding a taxpayer's residency and the source of his income, and the Virgin Islands has no way of defending the BIR's opposite determinations, the clear message to Virgin Islands taxpayers and the BIR is that BIR findings are merely provisional—subject to reversal at any time at the IRS's

---

[10] "In a proceeding before the Tax Court to review a deficiency determination, the taxpayer–petitioner has the burden of proving by a preponderance of the evidence that the Commissioner's determination is erroneous." Estate of Whitt v. C.I.R., 751 F.2d 1548, 1556 (11th Cir. 1985).

[11] The IRS claims that it would also be able to avoid the statute of limitations in cases where it assumes the role of a Monday morning quarterback. See supra note 8.

whim.  The implications for the Virgin Islands' ability to effectively administer its system of taxation and provide tax incentives to its residents appear ruinous.[12]

Thus, even putting aside the Virgin Islands' interests in the disputed tax revenue, the IRS's ability to issue deficiency notices to Virgin Islands taxpayers beyond § 6501's three-year period implicates the Virgin Islands' interest in preserving the integrity of its tax system.  This type of sovereign interest is precisely the type of legally protectable interest that has long formed the basis for intervention of right under Rule 24(a)(2).  See, e.g., Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 135–36, 87 S. Ct. 932, 937, 17 L. Ed. 2d 814 (1967) (allowing the state of California to intervene to protect its interests in a competitive natural gas market); Georgia v. U.S. Army Corps of Engineers, 302 F.3d 1242, 1250–52 (11th Cir. 2002) (allowing the state of Florida to intervene to protect its interests in the interstate flow of water); Nuesse v. Camp, 385 F.2d 694,

---

[12] The IRS's enforcement efforts against these Taxpayers are part of the IRS's broader attempt to crack down on perceived abuse of a tax credit that is only available to bona fide Virgin Islands residents.  See IRS, Notice 2004-45, 2004-2 Cum. Bull. 33.  We agree with the assessment made by the National Taxpayer Advocate in in a 2009 report to Congress:

> [The IRS's statute-of-limitations position] sends the message that the IRS might arbitrarily eliminate the benefit of any SOL by singling out those who take advantage of legitimate tax incentives.  Perceptions of arbitrary and unfair tax administration not only undermine the purpose of tax incentives designed to attract business to the USVI, but may also increase controversy and diminish the public's willingness to comply with the law, potentially reducing federal tax receipts.

National Taxpayer Advocate, 2009 Annual Report to Congress, at 392.

701 (D.C. Cir. 1967) (allowing a state banking commissioner to intervene to protect its interests in the state bank's ongoing operation).

We turn, then, to whether the Virgin Islands' exclusion from the Tax Court proceedings would, "as a practical matter impair or impede [its] ability to protect its interest," and whether "existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

The foregoing discussion regarding the practical implications of a Tax Court adjudication contains the bulk of our analysis of whether the Virgin Islands' ability to protect its interests would be "as a practical matter impair[ed] or impede[d]" by the denial of intervention. See Cascade Natural Gas, 386 U.S. at 134 n.3, 87 S. Ct. at 936 n.3 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." (citation omitted)). All that is required under Rule 24(a)(2) is that the would-be intervener be practically disadvantaged by his exclusion from the proceedings. Chiles, 835 F.2d at 1214. We have long held that "the potential for a negative stare decisis effect 'may supply that practical disadvantage which warrants intervention of right'"; though the principal inquiry is into the "practical impairment" of the intervenor's interests. Stone v. First Union Corp., 371 F.3d 1305, 1309–10 (11th Cir. 2004) (quoting Chiles, 865 F.2d at 1214). As we have explained in detail, the two issues to be litigated before the Tax Court—the legal

19

question regarding the IRS's ability to collect taxes from Virgin Islands taxpayers outside § 6501's three-year limitations period, and the factual findings regarding these Taxpayers' residency and source of income—will affect the Virgin Islands' ability to independently administer its tax system and will impact its claim to the tax revenue it received from these Taxpayers. The Tax Court's answer to the legal question will set a precedent that either allows the IRS to issue deficiency notices to Virgin Islands taxpayers in perpetuity, or limits the IRS to the usual three-year period. And the Tax Court is the only legal proceeding in which the Virgin Islands may defend the BIR's factual findings regarding these Taxpayers. Therefore, the Virgin Islands would be "practically disadvantaged" by their exclusion from the Tax Court cases.

Finally, while the Taxpayers have taken the same litigation position as the Virgin Islands, the Taxpayers interest is to avoid paying taxes twice on the same income. This interest in their overall tax liability is not the same as the Virgin Islands' interest in how the taxes are apportioned between the two governments. And the Taxpayers' pecuniary interest is qualitatively different from the Virgin Islands' sovereign interests in the administration of its tax system. See Appleton II, 430 F. App'x at 138 ("While the issue that concerns both the [Virgin Islands] and [the taxpayer] is the same . . . [The Virgin Islands'] interest in the proceedings is certainly different from [the taxpayer's] interest in dealing with this one-time tax

adjustment."); see generally Stone, 371 F.3d at 1311 ("There is a presumption of adequate representation where an existing party seeks the same objectives as the interveners. This presumption is weak and can be overcome if the [intervenor] present[s] some evidence to the contrary." (citation omitted)). Moreover, the Taxpayers do not have the same institutional knowledge of the interrelationship between the United States and Virgin Islands tax systems, nor do they have access to the same information regarding the consequences of the IRS's statute-of-limitations position. The "inadequate representation" requirement "should be treated as minimal" and is satisfied "unless it is clear that [the existing parties] will provide adequate representation." Chiles, 865 F.2d at 1214 (citations omitted). Because of the Taxpayers' different interests and capabilities, we conclude that the Virgin Islands' interests in the proceedings are not adequately represented.

B.

Thus, the Virgin Islands qualifies for intervention of right under Rule 24(a)(2). However, the Appleton I court expressly reserved the question of whether Rule 24(a)(2) applies in Tax Court in the first place:

> A review of this Court's jurisprudence reveals that the Court has never recognized intervention of a third party as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2). Because we find that [the Virgin Islands] has not satisfied the requirements of Fed. R. Civ. P. 24(a)(2), we need not and do not decide herein whether Fed. R. Civ. P. 24(a)(2) applies to proceedings in this Court.

21

135 T.C. at 466–67. We now hold that Rule 24(a)(2) applies and, accordingly, that the Virgin Islands may intervene in the Taxpayers' cases as a matter of right.

As explained above, the Tax Court Rules do not provide rules for intervention of right, save for a few specific situations that do not apply here. But Tax Court Rule 1(b) provides the mechanism through which the Tax Court may use the Federal Rules of Civil Procedure where an applicable Tax Court rule does not exist, and Tax Court Rule 1(d) requires that "[t]he Court's Rules shall be construed to secure the just . . . determination of every case."

Given the thrust of the Tax Court rules, we do not think that novelty is a sufficient justification to deny the Virgin Islands the benefit of Rule 24(a)(2), particularly because the timing of the IRS's enforcement efforts against these Taxpayers has effectively closed off all other venues to the Virgin Islands. If not allowed to intervene in the three Tax Court cases at hand, the Virgin Islands will be denied the opportunity to participate in any judicial determination of these Taxpayers' residency and the source of their income.

Moreover, intervention of right is available in the other judicial proceedings in which Virgin Islands taxpayers' liability to the United States or the Virgin Islands is ordinarily determined. If a Virgin Islands taxpayer receives a deficiency notice from the IRS, he can either petition the Tax Court without paying the deficiency, or he can pay the deficiency and sue the United States for a refund in

22

the District Court for the district in which he resides or in the Court of Federal Claims. See 26 U.S.C. § 6213(a); 28 U.S.C. § 1346(a)(1). Rule 24(a)(2) applies in both "postpayment" venues.[13] Hence, if Rule 24(a)(2) does not apply in the Tax Court, the Virgin Islands' ability to intervene of right would turn on the taxpayer's decision to either pay first or litigate first—even though the issues litigated in a prepayment challenge and a postpayment refund claim would be identical. Similarly, on the Virgin Islands side, if a taxpayer receives a deficiency notice from the BIR or has already paid taxes to the Virgin Islands, he may sue in the Virgin Islands District Court—in which the Federal Rules of Civil Procedure apply and in which the United States can intervene of right (as illustrated by its intervention in V.I. Derivatives).

And finally, as a general policy matter, having both governments participate in a single judicial determination—where a taxpayer's residency or the source of a particular item of income have been contested by one or both governments—averts the possibility of inconsistent taxation, conserves judicial resources, and ensures a more informed decision by virtue of both governments' participation.

Therefore, we conclude that Rule 24(a)(2) applies to the instant Tax Court proceedings and that the Virgin Islands satisfies the Rule's requirements. Because

---

[13] The Rules of the United States Court of Federal Claims include a word-for-word analog to Rule 24(a)(2), which the Court of Federal Claims has applied in identical fashion to the Federal Rule of Civil Procedure on which it is based. See, e.g., Klamath Irrigation Dist. v. United States, 64 Fed. Cl. 328, 329–30 (2005).

23

we conclude that the Tax Court should have allowed the Virgin Islands to intervene as a matter of right under Rule 24(a)(2), we do not reach the question of whether the Tax Court abused its discretion in denying permissive intervention under Rule 24(b)(2).

We accordingly remand these cases to the Tax Court with instruction to grant the Virgin Islands intervention.

SO ORDERED.