NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0145n.06
Filed: February 23, 2005
NO. 03-4278

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LIBERTE CAPITAL GROUP, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JAMES A. CAPWILL, | ) | OHIO, WESTERN DIVISION |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LIBERTY BANK, N.A., KEYBANK | ) | |
| NATIONAL ASSOCIATION, U.S. BANCORP, | ) | |
| as successor to Firstar Bank, f/k/a/ Star Bank, | ) | |
| NA, | ) | |
| | ) | |
| Appellants. | ) | |

BEFORE:     KEITH, CLAY, and COOK, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  We wade into this complex litigation to determine whether the district court erred in denying a motion submitted by Liberty Bank, Keybank National Association, and U.S. Bancorp ("the Banks") to intervene in this case.  Upon review of the voluminous record, we agree with the district court's decision to deny the Banks' application for intervention of right in this case.  We therefore AFFIRM the district court's holding in that regard. We do not agree, however, with the district court's terse denial of the Banks' application for permissive intervention.  We therefore REVERSE that aspect of the decision and hold that the district court abused its discretion and should have granted permissive intervention by the Banks.

## I.

The Plaintiff in the underlying case, Liberte Capital LLC ("Liberte" or "Plaintiff") was engaged in the viatical settlement industry. In 1997, Liberte entered into an agreement with James Capwill ("Capwill" or "Defendant") and his companies, Viatical Escrow Services ("VES") and Capital Fund Leasing ("CFL"). The agreement empowered Capwill to serve as the escrow agent in handling Liberte's investment funds.

On April 8, 1999, Liberte filed this civil action, charging that Capwill, via VES and CFL, unlawfully diverted funds escrowed for insurance premiums or awaiting placement in viatical contracts.[1] On July 15, 1999, the district court appointed two receivers, Victor Javitch ("Javitch") and William Wuliger ("Wuliger"), and authorized them to recover the funds lost by Capwill's actions. The judgment entry appointing the receivers states in part:

> that it is beneficial for a Receiver to be forthwith appointed ... to take charge of the assets belonging to VES and CFL, to manage those assets and to see the proper administration and, where appropriate, eventual sale of said assets and distribution to creditors ... ."

J.A. at 132.

The entry of appointment states that the receivers are empowered to "oversee and to administer the business and assets" of Capwill's companies, VES and CFL, but did not grant the

---

[1] Capwill was later convicted of theft and mismanagement of nearly forty million dollars in a scheme to defraud investors in viatical contracts. *U.S. v. Capwill*, Case No. 01-CR-0471 (N.D. Ohio 2004).

receivers the authority to represent and pursue the interests of the individual viatical investors who had also lost funds due to Capwill's dealings.

The receivers filed a myriad of litigation subsequent to their appointment, including claims against brokerage houses in which Capwill invested funds, agents of Liberte who sold the viatical investments, and the three commercial banks that now seek to intervene in this case. In 2002, Wuliger, acting on behalf of Capwill's companies and the individual viatical investors, filed separate complaints against the Banks, alleging that Capwill maintained accounts at each of them.[2]  In each complaint, Wuliger alleged that Capwill held accounts with the Banks and made a number of banking transactions or fund transfers from these accounts.  Wuliger also alleged that the Banks should have known of or suspected Capwill's wrongful activity.

The Banks each filed Motions to Dismiss, arguing in part that Wuliger lacked standing to pursue these claims.  The Banks acknowledged that Wuliger had standing to represent Capwill's companies, but argued that he did not have standing to pursue claims solely belonging to the viatical investors.

Concurrent with these proceedings, Wuliger's "co-receiver," Javitch, filed, on behalf of the individual viatical investors, a case against a brokerage firm that received some of Capwill's funds. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003).  In addressing an appeal from the district court's decision, we held that the district court's order of appointment did not grant Javitch

---

[2] *See Wuliger v. Liberty Bank, N.A.*, Case No. 02-CV-1378 (filed July 17, 2002); *Wuliger v. Star Bank, N.A., et al.*, Case No. 02-CV-1513 (filed August 1, 2002); *Wuliger v. Keybank Nat'l Ass'n, et al.*, Case No. 02-CV-2160 (filed November 1, 2002).

the authority to pursue claims belonging solely to the viatical investors. *Id.* at 625 (citations omitted).

Following that decision, on April 23, 2003, Javitch and Wuliger filed a joint motion in this case asking the United States District Court for the Northern District of Ohio to expand their authority as receivers and grant them both the power to "represent and pursue the interests of [viatical] investors directly." The motion was unopposed by Liberte and Capwill, and the court granted the receivers' motion. Wuliger then filed a brief in his three pending cases against the Banks, arguing that the newly-entered order in this case rendered moot the Banks' arguments that Wuliger did not have standing to pursue the claims of the viatical investors.

Because the Banks were not parties in the case at hand, *Liberte Capital v. Capwill*, they allege that they had no prior notice of the receivers' motion, and therefore no opportunity to object or respond to its proposition. Consequently, the Banks sought to intervene in this case, in order to submit a motion asking the court to vacate the April 23, 2003, order granting Wuliger and Javitch the authority to represent the viatical investors. In their intervention request, the Banks argued that the order significantly affects the resolution of the standing issue in the cases Wuliger filed against them, and that absent intervention, their ability to protect their interests was substantially impaired. The district court denied the Banks' request for intervention, citing the possibility of prejudice and undue delay. The Banks now appeal that denial, arguing that they have a substantial legal interest in the case and that their ability to protect that interest would be impaired absent intervention.

**II.**

We review the district court's determination of the Banks' right to intervene de novo, with the exception of the court's finding on timeliness of the interveners' request, which we review for an abuse of discretion. *Mich. State AFL-CIO v. Miller* (6th Cir. 1997). We also review the district court's denial of a motion for permissive intervention for an abuse of discretion. *Purnell v. City of Akron*, 925 F.2d 941, 950-51 (6th Cir. 1991).

## II. A.

Rule 24(a) of the Federal Rules of Civil Procedure requires intervention of right:

> ... (1) [W]hen a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to... the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

In evaluating whether a right to intervene exists, we examine four issues: (1) whether the application to intervene was made in a timely fashion; (2) whether the applicant has a substantial legal interest in the case; (3) the degree to which the applicant's ability to protect that interest is impaired absent intervention; and (4) the inadequacy of the interest's representation by parties already before the court. *Miller*, 103 F.3d at 1245.

We disagree with the district court's determination that, although the Banks filed a timely motion to intervene, their interest is not sufficiently substantial to allow intervention by right. According to Rule 24, a proposed intervenor need only claim an interest "relating" to the property or transaction that is the subject of the action. Fed. R. Civ. P. 24(a)(2). This court generally construes that interest liberally, *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987), and an

inquiry into the substantiality of the interest is "necessarily fact-specific," *Miller*, 103 F.3d at 1246.

Wuliger purports to derive his authority to sue the Banks on behalf of the investors from the district court's April 22, 2003 order in this litigation. The district court relied on that order when it denied the Banks' motions to dismiss Wuliger's separate lawsuits against them. The order played a critical role in the court's determination that the Banks must respond on the merits in those lawsuits, which could result in the Banks losing millions of dollars. Thus, the Banks have a substantial financial interest at stake in these lawsuits, which relates to a transaction at issue in this case – namely, the court's expansion of Wuliger's authority to represent individual investors and thus file suit against the Banks on their behalf.

The substantiality of the Banks' interest in this litigation is supported by our decisions in *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (finding that students had a substantial interest in whether their university employed race as a factor in university admissions programs), *Linton v. Commissioner of Health & Environment, State of Tennessee*, 973 F.2d 1311, 1313 (6th Cir. 1992) (finding that interveners had a substantial interest in the potential impairment of contractual and statutory rights to discontinue voluntary participation in Medicaid), and *Miller*, 103 F.3d at 1245 (finding that interveners had a substantial interest in promoting the validity of legislation). In *Miller*, the Michigan Chamber of Commerce sought to intervene in a suit by labor unions challenging an amendment to Michigan's Campaign Finance Act, Mich. Comp. Laws Ann. §§ 169.201-.282 (1996), which required labor unions to obtain affirmative consent at least once per year from members who made automatic political contributions to their union. *Miller*, 103 F.3d at 1243. The court majority found that the Chamber of Commerce had a substantial legal interest by virtue

of its role in the legislative process surrounding the contested amendments and because the Chamber itself was regulated by several of the statutory provisions being challenged in the underlying litigation. *Id.* at 1247. Thus, this court granted the Chamber's motion for intervention by right, despite the fact that the Chamber had no legal right to the enactment of the challenged legislation.

The Banks' interest in this action, namely the millions of dollars they stand to lose should Wuliger be granted authority to represent the individual Alpha and Liberte investors, is at least as substantial as the more generalized interest of the Chamber in *Miller*. The Banks are more than curious bystanders in the underlying litigation; they have a vested interest in ensuring the proper determination of the scope of Wuliger's authority.

Accordingly, we determine that the district court erred in finding that the Banks' interest in the subject matter of this litigation was not substantial. Although the Banks do not have a substantial interest in the ultimate resolution of the instant case on the merits, this fact alone does not justify the denial of leave to intervene of right. *See Beckham Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 472-73 (9th Cir. 1992) (rejecting the argument that an intervenor must have a claim relating to the merits of the action); *Goldberg, Inc. v. Fisher Foods, Inc.,* 823 F.2d 159, 164 (6th Cir. 1987) (condoning the practice of intervention solely for discovery purposes).

We agree with the district court's ultimate rejection of the Banks' application for intervention of right, however, because we find that the Banks failed to show that their interest in the litigation would be impaired absent intervention. Indeed, the Banks carry a "minimal" burden of showing only that "impairment of [their] substantial legal interest is possible if intervention is denied." *Grutter*, 188 F.3d at 399 (citations omitted). Yet, based on the principal authorities that

the Banks advance in support of their argument that the *stare decisis* effects of the district court's

Aprill 22, 2003, order expanding Wuliger's authority impair their ability to protect their interest,

most significantly *Jansen v. City of Cincinnati*, 904 F.2d 336 (6th Cir. 1990), we conclude that their

impairment concerns are vastly overblown.

The underlying litigation in *Jansen* involved white applicants who were denied admission

to the firefighter recruit class hired by Cincinnati's fire department. *Jansen*, 904 F.2d at 339. The

plaintiffs alleged that the city's recruiting policy violated a consent order that arose out of previous

litigation. *Id.* The proposed intervenors, a group of African-American applicants and employees

in the fire department, sought to intervene because the city had failed to advance certain arguments

in support of its hiring practices. *Id.* The court granted them intervention by right, reasoning that

the intervenors would be bound in future litigation by a decision rejecting the hiring practices in the

immediate litigation. *Id* at 342. In particular, the Court noted that "the possibility of adverse *stare*

*decisis* effects provide[s] intervenors with sufficient interest to join an action." *Id.* (citations

omitted). *See also Linton*, 973 F.2d at1319 (granting intervention by right on the grounds that,

absent intervention, the proposed intervenors would not be able to seek appellate review of a district

court decision that affected their substantial interest at stake in the case); *Miller*, 103 F.3d at 1245

(noting that the Chamber sought to intervene to ensure "the ability to seek appellate review in the

event that the district court ultimately determines that one or more of the1994 amendments [to

Michigan's Campaign Finance Act were] unconstitutional and the original defendants fail to appeal

that ruling").

Applying these precedents to the case at hand, we find that the Banks' ability to protect their interest will not be significantly impaired absent intervention. The Banks are still able to file, and indeed have filed motions to dismiss based on lack of standing in the separate suits Wuliger has brought against them. And though Wuliger cites the district court's April 22, 2003, order in his opposition to the Banks' motions, that order does not have a strict *stare decisis* effect in the lawsuits against the Banks. No one has argued that the Banks are collaterally estopped from raising their objections by the April 22, 2003, order, or that the court (in those separate lawsuits) was bound by that order when it denied the Banks' motions to dismiss. The situation is therefore quite different from the facts in *Jansen*, *Linton*, and *Miller*, where this Court found intervention necessary to avoid having the intervenors *bound by a decision* and left with *no opportunity for appeal*.

Indeed, the April 22, 2003, order is *not* binding on the parties or the court with respect to the separate litigation against the Banks. Now that the district court has denied the Banks' motions to dismiss, they have the opportunity to raise their standing argument on appeal should those cases proceed to trial and result in adverse judgments against the Banks. As such, we find that the substantial interest the Banks have in this litigation would not be significantly impaired absent intervention and therefore uphold the district court's denial of the Banks' application for intervention by right.

**II. B.**

We are led to a different conclusion in determining whether the Court should have granted

the Banks' application for permissive intervention in this suit. Federal Rule 24(b)(2) states that a

court should grant permissive intervention:

> [W]hen an applicant's claim or defense and the main action have a question of law
> or fact in common. ... In exercising its discretion the court shall consider whether the
> intervention will unduly delay or prejudice the adjudication of the rights of the
> original parties.

Fed. R. Civ. P. 24(b)(2).

Our review here is limited to determining whether the lower court abused its discretion in

denying the Banks's motion for permissive intervention. *Purnell,* 925 F.2d at 950-51. In reviewing

a district court's exercise of discretion, our court must ensure that the lower court, "except where

the basis for the decision is obvious in ... the record, provide[s] enough of an explanation for its

decision to enable [our] court to conduct meaningful review." *Mich. State AFL-CIO*, 103 F.3d at

1248.

The district court rejected the Banks' request for permissive intervention, explaining only

that it felt the Banks had an "alternative means of asserting their rights" in the cases that Wuliger

had brought against them on behalf of the viatical investors. The court's opinion offers sparse

reasoning for denying the Banks' application for permissive intervention, leading us to conclude that

the district court abused its discretion in denying the motion.

First, the district court should have evaluated whether the Banks demonstrated a "claim or

defense" that has a "question of law or fact in common" with the current case. Fed. R. Civ. P.

24(b)(2). There are obviously common questions of law and fact between the standing arguments

asserted by the Banks in the cases that Wuliger filed against them and the scope of authority issues

involved in the district court's April 23, 2003, order: namely, whether the receivers have the authority to assert claims belonging to the viatical investors. The district court failed to consider this factor in its analysis.

The second factor the court must consider under Rule 24(b) is whether intervention would result in undue delay or excessive prejudice to the original parties in the case. *Mich. State AFL-CIO*, 103 F.3d at 1248. In this regard, the district court stated only that granting permission to intervene "to a party who is without a property interest has the potential of impacting pending related litigation which would not only result in undue delay but would prejudice the rights of existing parties herein." J.A. at 102. The district court's opinion does not sufficiently explain why intervention would result in undue delay or which rights in particular it would prejudice. Allowing the interveners to participate in the litigation would presumably have the sole effect of asking the district court to revisit its decision in an unopposed order and to apprise the judge of case law affecting the order. The Banks assert that they do not intend to take discovery or affect the ultimate outcome of the case. Further, the Banks do not contest, and have no reason to contest, either party's right to relief in the case, but merely wish to assert arguments that could avoid the foreclosure of a key defense in the Banks' related litigation. We therefore find that allowing the Banks to intervene would neither unduly delay an already longstanding case nor prejudice the current parties in any way.

Because the district court offered insufficient explanation for denying the Banks' request for permissive intervention, and because the current record does not indicate that the decision to deny is "obvious," we find that the district court abused its discretion. Upon review of the record, we

conclude that the Banks have sufficient standing to support their request for permissive intervention.

We therefore reverse the denial of the Banks' application for permissive intervention.

## **CONCLUSION**

For the reasons that have been set forth above, we AFFIRM the district court's denial of intervention of right and REVERSE the denial of permissive intervention. We REMAND to the district court for further proceedings consistent with this opinion.

COOK, Circuit Judge, dissenting. While I agree with the majority that the district court properly denied intervention of right, I differ on the subject of permissive intervention—I think the district court properly denied it. The district court's April 22, 2003 order did not impair the Banks' ability to challenge Wuliger's standing. In a proceeding unrelated to that order, the Banks moved to dismiss Wuliger's claims for lack of standing, but the district court denied the motion on grounds independent of the April 22, 2003 order. *Wuliger v. Liberty Bank, N.A.*, No. 3:02 CV 1378, slip op. at 11 (N.D. Ohio March 4, 2004) ("Because this Court finds the Receiver has standing to bring this action on behalf of the VES and CFL entities, it is unnecessary to discuss the propriety of the Receiver's standing as it pertains to investor claims.").

And even if the district court did abuse its discretion in denying permissive intervention, the proper course would be to remand to allow the district court to reevaluate its denial, rather than grant intervention. Where neither the record nor the district court's opinion indicates the basis for denying permissive intervention, the proper action for this court is to remand to the district court for further proceedings. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997) ("Had we not concluded that the district court should have granted the Chamber intervention as of right, we would be compelled to remand for further development of the record as to the appropriateness of permissive intervention.").

Because granting the Banks' motion to intervene will only delay the pending litigation, I would affirm the district court's order denying permissive intervention.