RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

FREDERICK GRAINGER, JR.,

*Plaintiff*,

BRIAN BEHOVITZ,

*Proposed Intervenor-Appellant*,

*v.*

OTTAWA COUNTY, MICHIGAN, by its Board of Commissioners, et al.,

*Defendants-Appellees*.

No. 23-1230

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cv-00501—Paul Lewis Maloney, District Judge.

Argued: December 7, 2023

Decided and Filed: January 5, 2024

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant. Matthew T. Nelson, WARNER NORCROSS + JUDD, LLP, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, E. Powell Miller, THE MILLER LAW FIRM, P.C., Rochester, Michigan, for Appellant. Matthew T. Nelson, WARNER NORCROSS + JUDD, LLP, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge.   Three days after the district court denied Plaintiff Frederick Grainger, Jr.'s motion for class certification based on his inability to serve as a class representative, Brian Behovitz moved to intervene as a new putative class representative. Behovitz now appeals the district court's denial of his motion to intervene as of right and permissively under Federal Rule of Civil Procedure 24.   For the reasons set forth below, we **AFFIRM** the district court's denial of Behovitz's motion to intervene.

## I.  BACKGROUND

### A.  Grainger's Putative Class Action

On June 23, 2019, Grainger filed a putative class action complaint pursuant to Federal Rule of Civil Procedure 23 against Ottawa County and other Michigan counties, alleging various federal and state law claims.   To recover unpaid property taxes, these counties foreclosed on homes and sold them at auction.   However, Grainger alleged that the counties had a policy of retaining all the proceeds of these home foreclosure auctions, even if those proceeds vastly exceeded the unpaid property taxes of the homeowners.[1]   Grainger owned property within Ottawa County, Michigan.   He had unpaid property taxes of $21,500 on his home, and Ottawa County seized the property on April 1, 2013.   In September 2013,[2] Ottawa County sold Grainger's property for $392,000 but never returned to Grainger the $370,500 difference between Grainger's outstanding taxes and the proceeds of the sale.   After Grainger filed a second

---

[1]Michigan counties' practice of retaining the full proceeds from sales of foreclosed property has generated much litigation.   Both this Court and the Michigan Supreme Court have found that this practice constituted an unlawful taking.   The Michigan Supreme Court found that it violated the Takings Clause of the Michigan Constitution, *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 463 (Mich. 2020), and this Court found that it violated the Takings Clause of the Fifth Amendment of the United States Constitution, *Hall v. Meisner*, 51 F.4th 185, 188 (6th Cir. 2022).

[2]Although Grainger's second amended complaint pleaded that Ottawa County sold his property on September 6, 2017, the district court noted that Grainger's briefs consistently stated that Ottawa County sold his property in September 2013.   Moreover, the district court took judicial notice of the quit claim deed used to sell Grainger's property, which showed that the sale occurred in 2013.

amended complaint, all Defendants moved to dismiss his claims, and the district court granted in part and denied in part these motions to dismiss.

Grainger also filed a motion for class certification. The district court declined to certify the class, finding that Grainger could not initiate a class action because his individual claims were barred by the statute of limitations. Specifically, the district court found that Grainger's cause of action accrued when Ottawa County sold his property in 2013, making his federal claims in this litigation—brought almost six years later—barred by the three-year statute of limitations applicable to actions under 42 U.S.C. § 1983 in Michigan.

Despite his untimely filing, the district court held that the statute of limitations for Grainger's *individual* claims was tolled by the Supreme Court's related decisions in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 552–53 (1974) and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983). In these cases, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Crown*, 462 U.S. at 353–54 (quoting *American Pipe*, 414 U.S. at 554). And the statute of limitations remains tolled until a ruling on the class certification motion. *Id.* A parallel class action to Grainger's had been filed in 2014, *see Wayside Church v. Van Buren County*, No. 1:14-cv-1274 (W.D. Mich. filed Dec. 11, 2014), and, at the time the district court decided Grainger's motion for class certification, the *Wayside* class certification motion remained pending. Because Grainger had been an absent class member in the *Wayside* litigation, the district court found that his individual claims had been tolled, permitting Grainger to assert them in the instant litigation.

Even though Grainger could bring his individual claims, as the Supreme Court later clarified in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018), the tolling rule promulgated in *American Pipe* and *Crown* did not permit him to file a new class action. Reasoning that the efficiency goals of *American Pipe* tolling are not served by permitting "a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action," the Supreme Court held in *China Agritech* that individuals who had their claims tolled pursuant to *American Pipe* could not bring a successive class action. *Id.* In Grainger's case, the

district court found that Grainger's federal law claims were tolled pursuant to *American Pipe* due to the *Wayside* litigation. Therefore, the district court held that *China Agritech* prevented Grainger from bringing a successive class action and prevented the district court from granting Grainger's motion to certify the class.

## B. Behovitz's Motion to Intervene

On March 5, 2021, three days after the district court denied the motion for class certification, Brian Behovitz moved to intervene as class representative. Behovitz experienced the same type of alleged injury as Grainger. He failed to pay $9,400 in taxes on his property in Barry County, Michigan. Barry County sold the property at a tax foreclosure auction in September 2018 for $131,000 and allegedly did not pay Behovitz any of the surplus of the sale. In contrast to Grainger, Behovitz's foreclosure sale took place less than three years before he moved to intervene, so his claims were not yet time-barred, and *China Agritech* did not bar him from initiating a new class action.

Behovitz claimed that he had an interest in intervening to maintain the suit as a class action and that he could not rely on Grainger to do so anymore. He also emphasized that courts generally allow absent class members to intervene when the named representatives cannot adequately represent the class. In addition to his request to intervene as of right, he requested permissive intervention.

The district court denied Behovitz's motion to intervene as of right.[3] First, it found that Behovitz had no interest in the litigation because, after the denial of class certification, the litigation became an individual dispute between Grainger and Ottawa County. Because Behovitz had no interest in this individual dispute, the district court found that he had no interest to protect through intervention. It further found that, even if Behovitz did have an interest in pursuing class litigation for his claims, he did not need to intervene to do so because he could file his own lawsuit. The district court made no finding as to whether Behovitz's motion to intervene as of right was timely.

---

[3]Although Behovitz filed his motion on March 3, 2021, the district court did not rule on it until February 7, 2023—almost two years later. This delay was due to a stay imposed by the district court to await this Court's ruling in two similar class actions.

As to permissive intervention, the district court assumed, without deciding, that Behovitz's motion was timely inasmuch as the court had "not yet issued a case management order," and the parties had yet to file motions for summary judgment. Op. and Order, R. 217, Page ID #4920. It also assumed, without deciding, that Behovitz shared a common question of law or fact with respect to the individual dispute between Grainger and Ottawa County. Nonetheless, it denied permissive intervention because it found that Behovitz's intervention would cause undue delay to already prolonged litigation by requiring another round of briefing and a ruling on a second class certification motion.

The court further declined to permit Behovitz to intervene because his intervention could introduce complications relating to Article III standing. In an order issued the same day as the denial of Behovitz's motion to intervene, the district court dismissed all Defendants except for Ottawa County, finding that Grainger did not have Article III standing to bring a claim against any of them. Grainger had argued that he had Article III standing to sue other counties based on the juridical link doctrine, which provides that a class representative may sue multiple defendants on behalf of the class even if all defendants did not injure the named representative. *See Fox v. Saginaw Cnty.*, 67 F.4th 284, 288 (6th Cir. 2023). The district court rejected the juridical link theory because neither Supreme Court nor Sixth Circuit precedent had recognized the theory, and because this Court and the Supreme Court have emphasized that Article III standing requirements apply equally to class actions.[4] In ruling on Behovitz's motion to intervene, the district court found that permitting Behovitz to serve as a named plaintiff would pose the same Article III deficiencies as Grainger faced, weighing against permitting intervention.

Finally, the district court held that permitting Behovitz to intervene would undermine the holding of *China Agritech*. In that case, the Supreme Court stated that "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations," 138 S. Ct. at 1804, which the district court interpreted as meaning that Behovitz could not

---

[4]This Court in *Fox*—decided after the district court's orders in this case—firmly rejected using the juridical link doctrine in a case where the named plaintiff challenged the same unlawful takings by Michigan counties. 67 F.4th at 288.

"transform a late-filed lawsuit into his own timely-filed action," Op. and Order, R. 217, Page ID #4922.  Behovitz timely appealed the district court's denial of his motion to intervene.

### C. *Wayside* Litigation

Throughout this appeal, Behovitz has focused on the similar *Wayside* litigation—the same class action that tolled Grainger's statute of limitations as an absent class member—in which the same district court preliminarily approved a settlement that Behovitz labels "collusive."  Appellant's Br., ECF No. 20, 15.  But despite the many pages afforded to it in Behovitz's brief, the *Wayside* litigation is not the subject of this appeal; instead, it is the subject of an entirely separate appeal taken by Grainger and Behovitz to challenge the approval of the settlement.  *See In re: Frederick Grainger, Jr., et al.*, No. 23-0103 (6th Cir. filed Mar. 31, 2023).

*Wayside* was filed in 2014, five years before Grainger filed his initial class action complaint.  It sought relief for a state-wide class of plaintiffs in nearly identical litigation to the instant case.  Counsel for plaintiffs in *Wayside* and *Grainger* have been engaged in, in Behovitz's own words, a "leadership dispute" since Grainger filed his case in 2019.  Appellant's Br., ECF No. 20, 17.  Behovitz claims that the settlement is a reverse auction,[5] and that it is collusive both in process and substance.  Behovitz argues throughout this appeal that the *Wayside* litigation provides a basis for his intervention in the instant case.

## II.   DISCUSSION

### A. Intervention as of Right

Our review of the district court's denial of this motion to intervene is *de novo*.  *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011).  "Although our consideration of the timeliness of an application to intervene is ordinarily tempered by deference to the district court, we have consistently applied a *de novo* standard to the issue where, as here, the district court failed to make any factual findings in this regard."  *Id.*

---

[5]A reverse auction occurs "when 'the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.'"  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)).

The right of putative class members to intervene in an action is governed by Fed. R. Civ. P. 24(a), the general rule addressing intervention as of right. *See Crown*, 462 U.S. at 350 n.4. Rule 24(a) provides, in relevant part, that a court "must" allow intervention for anyone who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).[6] The Sixth Circuit requires that proposed intervenors establish the following four factors to intervene as of right:

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)). The proposed intervenor must satisfy all four elements of this standard to prevail on a motion to intervene as of right. *Blount-Hill*, 636 F.3d at 283. In this case, Behovitz has likely failed to identify a cognizable substantial interest in the underlying litigation and has certainly failed to show that any asserted interest will be impaired absent intervention. Because he has failed to satisfy all four of the factors for intervention as of right, the district court did not err in denying his motion.

### 1. Substantial Interest

As an initial matter, we have serious concerns that Behovitz's purported interest— "pursuing his claim as a class action"—satisfies the substantial interest prong for intervention as of right. Appellant's Br., ECF No. 20, 38. To support their respective positions, both parties point to two separate California district court cases, neither of which particularly aids our inquiry on what appears to be an issue of first impression.

---

[6]Rule 24(a)(1) provides for intervention as of right when an individual "is given an unconditional right to intervene by a federal statute." Behovitz did not argue in the district court and has not argued on appeal that he is entitled to intervention as of right under this provision.

Although this Court "has opted for a rather expansive notion of the interest sufficient to invoke intervention of right," we have also acknowledged that "this does not mean that any articulated interest will do." *Coal. to Def. Affirmative Action*, 501 F.3d at 780 (citations omitted). "[P]roposed intervenors need not have 'a specific legal or equitable interest' in the litigation for the interest to qualify as substantial." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 772 (6th Cir. 2022) (quoting *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). To rise to the level of a substantial interest, this Court has held that the interest "must be significantly protectable." *Id.* (citation omitted).

This Court has previously acknowledged that property rights are the "most elementary type" of protectable interest, *id.* (citation omitted), and has upheld the rights of individuals to intervene when the outcome of the litigation would affect those property rights, *see, e.g.*, *United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993) (finding a substantial interest when the litigation would condemn the proposed intervenor's property); *see also Wineries*, 41 F.4th at 772–74 (holding that a potential diminishment in property values from litigation seeking to enjoin enforcement of zoning ordinances constituted a substantial interest for property-owner intervenors). And we have previously recognized a substantial interest even when a proposed intervenor's rights are not directly impacted by the ultimate decision on the merits. *See*, *e.g.*, *Jansen v. City of Cincinnati*, 904 F.2d 336, 342 (6th Cir. 1990) (finding a substantial interest when the litigation would interpret a consent decree to which the proposed intervenors were parties); *see also Liberte Cap. Grp., LLC v. Capwill*, 126 F. App'x 214, 219 (6th Cir. 2005) ("Although the [intervenors] do not have a substantial interest in the ultimate resolution of the instant case on the merits, this fact alone does not justify the denial of leave to intervene of right."). Nevertheless, to our knowledge, we have never held that a proposed intervenor has a substantial interest in the procedural mechanism by which litigation proceeds. This lack of authority is sensible given that this type of procedural interest likely cannot suffice to create "an interest relating to the property or transaction that is the *subject* of the action." Fed. R. Civ. P. 24(a)(2) (emphasis added).

On appeal, Behovitz argues that the class action device changes the Rule 24 analysis because absent putative class members have a right to intervene. To be sure, courts allow

intervention by absent class members of pre-certification or certified class actions when the intervenors have shown that the named plaintiff does not adequately represent their interests. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (acknowledging that courts may permit intervention by a new class representative when the named plaintiff is inadequate); *see also* 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 9:30 (6th ed. 2023) ("[M]embers of a class have a right to intervene if their interests are not adequately represented by existing parties.").[7]  But courts still apply the standard Rule 24 framework to intervention by absent class members and, because class actions are representative of absent class members' interests, the substantial interest prong is readily satisfied.  *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation.").  By contrast, in this litigation, class certification has been denied.  Consequently, as the district court properly noted, the only claims before it were Grainger's individual claims against Ottawa County.  Thus, the question presented in this case—as framed by Behovitz's own asserted interest—is whether the class action device itself provides a sufficient interest for former putative absent class members to intervene following the denial of class certification.  For the reasons discussed above, it likely does not.

Moreover, carrying Behovitz's argument to its logical endpoint could result in "multiple bites at the certification apple" for class counsel.  *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 827 (7th Cir. 2011); *cf. Lidie v. California*, 478 F.2d 552, 555 (9th Cir. 1973) ("[W]here the original plaintiffs were never qualified to represent the class, a motion to intervene represents a back-door attempt to begin the action anew, and need not be granted.").  Behovitz argues that his intervention in the instant case should be required because class counsel did not know of the *China Agritech* bar to Grainger's claims until the district court denied class certification.  Even if

---

[7]Indeed, the Advisory Committee's Notes to the 1966 amendment to Rule 24(a) specifically explain that the Rule was changed to ensure that absent class members will be able to intervene as of right in this situation.  Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment.  And Rule 23(d)(1)(B)(iii) specifically contemplates the right of absent class members to intervene in a certified class action, stating that a court may issue orders that "require . . . giving appropriate notice to some or all class members of . . . the members' opportunity . . . to intervene and present claims or defenses, or to otherwise come into the action."

true, class counsel's mistaken belief in the propriety of a class representative does not mandate that the district court grant intervention as of right.[8]

This is not to say that proposed intervenors seeking to act as a putative class representative for an uncertified class may never intervene, as the district court could find that they meet the less restrictive test for permissive intervention. Moreover, under different facts— *i.e.*, when the same defendant injured the proposed intervenor—it is possible that a proposed intervenor could have a substantial interest in the underlying merits of the litigation. In this case, Behovitz has not argued, nor could he, that he has any interest in the dispute between Grainger and Ottawa County because his claim is against a different county for an entirely different transaction. To hold that pursuing the class action device alone constitutes a sufficient interest for intervention as of right would mean that whenever putative class representatives are deemed to be inadequate, the district court must allow a proposed intervenor to continue in the class representative's stead if the motion to intervene is timely. Despite our concerns with Behovitz's proposed substantial interest, in light of the insufficient briefing on this issue of first impression, we need not decide the issue today. Even if this purported interest could be a basis for intervention, Behovitz has not shown that his ability to pursue his claims as a class action would be limited without intervention.

### 2. Interest Impaired Absent Intervention

The third factor requires Behovitz to show that his "interest may be impaired in the absence of intervention." *Coal. to Def. Affirmative Action*, 501 F.3d at 779. We have previously acknowledged that "[t]his burden is minimal," and only requires a showing that "disposition of the present action would put the movant at a practical disadvantage in protecting its interest." *Wineries*, 41 F.4th at 774 (alteration in original) (citations omitted). However, as with the substantial interest requirement, this generous treatment does not render the impairment prong a

---

[8]Defendants argue and the district court held that requiring intervention in this case would also contravene *China Agritech*'s goal of preventing follow-on class actions; however, this is too broad a reading of *China Agritech*'s holding and reasoning. 138 S. Ct. at 1804. It prohibited absent class members from using *American Pipe* tolling to toll their own statute of limitations to file a later class action. *Id.* It acknowledged that the opposite holding could create endless tolling of the statute of limitations, as every time a class action was filed, absent class members' claims would be tolled. *Id.* at 1809. But Behovitz's claims are timely, and, as such, the situation contemplated by *China Agritech* is not implicated.

dead letter. For example, in *Liberte*, an unpublished case, this Court found the prong unsatisfied. 126 F. App'x at 220. Although proposed intervenors would be affected by an order in the underlying litigation, the order did not collaterally estop the intervenors from challenging its holding in separate litigation, nor did it bind them to its holding in the separate litigation. *Id.* In other words, because the Court found that the intervenors could press their claims in separate litigation, their interests would not be impaired absent intervention. *Id.* Other circuits have similarly found that intervention is not required when it would only prevent litigants from facing the inconvenience of filing their claims in other litigation. *See, e.g.*, *Gautreaux v. Pierce*, 743 F.2d 526, 535 (7th Cir. 1984) ("Refusing to allow intervention effectively would require only that Intervenors refile their motions and supporting documents in another lawsuit which would also be considered by a district judge. Under these circumstances, refusing to allow intervention will cause little if any inconvenience that would not also exist if we allowed intervention."); *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977) ("Mere inconvenience to the [intervenor] caused by requiring him to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2).").

Even if Behovitz could show that pursuing litigation as a class action constitutes a substantial interest, he has not shown that this interest will be impaired if he cannot intervene and continue *this* litigation as a class action. At the time he filed his motion to intervene, he could have filed his own class action; his claims were not barred by the statute of limitations, and there is no indication that the existence of other class actions addressing the same issues would have prevented him from initiating a new action. In response, Behovitz argues that the purportedly collusive settlement in the *Wayside* litigation gave rise to the need to intervene in this litigation to pursue his class claims. He claims that the proposed settlement in *Wayside* "poses an existential risk to his interest in having this case litigated as an adversarial class action, as opposed to its resolution through a collusive and inadequate settlement." Appellant's Br., ECF No. 20, 40. Nevertheless, this does not explain why intervention, rather than initiating a new lawsuit, is required. Moreover, the proper mechanism to air grievances with the *Wayside* settlement is in an appeal directed at the *Wayside* settlement, which Behovitz has already filed. *See In re: Frederick Grainger, Jr., et al.*, No. 23-0103 (6th Cir. filed Mar. 31, 2023).

Alternatively, Behovitz could, as he also has, opt out of the *Wayside* litigation.**9** Pursuing his claims in this class action is not the only way, nor the proper way, to attempt to contest the *Wayside* settlement.

Behovitz points to an Eleventh Circuit case that he claims supports the idea that his desire to oppose the purportedly collusive settlement in *Wayside* supports intervention here. In that case, two class actions were filed, and one proceeded to a settlement that the other named plaintiffs deemed collusive. *Tech. Training Assocs., Inc. v. Buccaneers Ltd.*, 874 F.3d 692, 694 (11th Cir. 2017). The named plaintiffs of the non-settled class action moved to intervene in the settled class action to challenge the settlement. *Id.* at 695. The Eleventh Circuit ruled that intervention as of right was required. *Id.* at 698. It emphasized that, despite the remedies available to the intervenors under Rule 23, their interests would be impaired absent intervention because they would be bound by the purportedly inadequate class settlement in the underlying litigation. *Id.* at 696–98. Behovitz's use of this decision to support his intervention into this matter is inapposite as he will not be bound by any decision in *Grainger*. The situation in *Technology Training* is more akin to Behovitz's attempt to intervene in *Wayside* for purposes of opposing the settlement and provides little support for his intervention in *Grainger* to continue the class litigation.

Finally, Behovitz acknowledges that he could file a separate class action. He argues, however, that courts regularly permit intervention by absent class members in class actions, rather than have them begin litigation anew. To be sure, he is correct that courts allow intervention in certified or pre-certification class actions when, for example, the named plaintiff's claims become moot, or the named plaintiff is deemed inadequate to represent the class. As to the former, this intervention is widely granted, in part, to avoid concerns that defendants in class actions will pick off named plaintiffs in an effort to eliminate the class action itself. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). This concern is not present in this case. As to the latter, the Advisory Committee's Notes to the 1966 amendment to

---

**9**Behovitz contends that requiring him to opt out to pursue his grievances with the proposed settlement puts him in an "impossible position" because, if he opts out, he cannot object to the settlement. Appellant's Br., ECF No. 20, 40. But, again, this supposedly impossible position is a choice he must make as to how to properly challenge the *Wayside* litigation. It does not give him a right to pursue a competing class action to do so.

Rule 24 specify why the interests of absent class members of at least a certified class action may be impaired absent intervention when the named plaintiff is inadequate.  Because any outcome of the class litigation could bind class members, absent intervention, the class members would have to risk being bound by the judgment if a later collateral attack on the named plaintiff's representation were not successful:

> A class member who claims that his "representative" does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack.  Rather he should, as a general rule, be entitled to intervene in the action.

Fed. R. Civ. P. 24, advisory committee's notes to 1966 amendment.

By contrast, as a leading class action treatise has acknowledged, when class certification has been *denied*, this interest in intervention changes:  "In that instance, the ongoing case can have no preclusive effect on putative absent class members; the would-be intervenors therefore retain the ability to file their own suits, and hence, their interests are unlikely to even be 'practically' impaired."  3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 9:34 (6th ed. 2023) (footnotes omitted).  In this case, Behovitz could have filed his own class action rather than seeking to intervene in this litigation.  Because Behovitz has not established that his interest—to the extent it exists—may be impaired absent intervention, he has not established that he is entitled to intervene as of right.

### B.  Permissive Intervention

We review the denial of permissive intervention for an abuse of discretion.  *Coal. to Def. Affirmative Action*, 501 F.3d at 784 (citing *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991)).  "A district court abuses its discretion only when we are 'left with the definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where the trial court improperly applies the law or uses an erroneous legal standard.'"  *Id.* at 779 (quoting *Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002)).

Rule 24(b)(1)(B) states that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Further, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Thus, a district court may exercise discretion to permit a timely motion for intervention by a party who has stated a common question of law or fact, and must, in exercising this discretion, "balance undue delay and prejudice to the original parties." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).

As stated, the district court assumed that Behovitz's motion was timely and that he alleged a question of law or fact common to Grainger. However, it found that permitting Behovitz to intervene would further delay resolving the dispute because it would require the parties to brief, and the district court to decide, a second motion for class certification. This was not an abuse of discretion, as Behovitz specifically sought to intervene to renew the class action aspect of the litigation. Furthermore, the district court explained that Behovitz's intervention could create additional "complications," which could represent a finding that the intervention could create undue delays and prejudice the original parties. Op. and Order, R. 217, Page ID #4920. Both findings were supported. As stated, were Behovitz to intervene and attempt to certify a class, based on the district court's rejection of the juridical link doctrine—supported by this Court's later rejection of the doctrine, *see Fox*, 67 F.4th at 288—standing issues would arise. To establish Article III standing, Behovitz would have to seek the addition of multiple new plaintiffs to create a case or controversy between plaintiffs and each county named in the second amended complaint. Alternatively, if Behovitz were the only named plaintiff, as the district court noted, it would have to permit all counties to relitigate their motions to dismiss or *sua sponte* dismiss all counties other than Ottawa and Barry. Moreover, as the district court also acknowledged, all other counties had been dismissed from the litigation at this point—albeit, on the same day that the district court decided Behovitz's motion to intervene. Requiring all of these counties to rejoin the litigation after dismissal would certainly prejudice them and cause further delays in the litigation.

On appeal, Behovitz argues that his interest in class certification and in opposing the *Wayside* settlement "outweighs any 'prejudice.'"  Appellant's Br., ECF No. 20, 45.  But, as stated above, he likely does not have an interest in class certification, and this motion to intervene is not the proper vehicle to pursue his interest in opposing the *Wayside* settlement.  He also argues that the district court should not have cited delays in the litigation as reason to deny his motion when it took the court nearly two years to rule on his motion to intervene.  But this delay by the district court was the result of a stay of the entire *Grainger* litigation while this Court determined legal issues crucial to the case, not because of any lack of diligence.  For all these reasons, the district court did not abuse its discretion in denying Behovitz's motion for permissive intervention.

## III.  CONCLUSION

For the reasons stated above, the district court's denial of Behovitz's motion to intervene as of right and permissively is **AFFIRMED**.